## ALEXANDER et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13403.

United States Court of Appeals
Fifth Circuit.

Aug. 7, 1951.

Arthur Glover, Walter G. Russell, Amarillo, Tex., for petitioner.

Louise Foster, Ellis N. Slack, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, Bernard D. Daniels, Sp. Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and SIBLEY and STRUM, Circuit Judges.

STRUM, Circuit Judge.

Petitioners here seek review of decisions of the Tax Court sustaining deficiency assessments in income taxes entered by the Commissioner of Internal Revenue against petitioners, for the years 1943 and 1944.

Petitioners, husband and wife, are stock farmers operating a ranch in Texas. They have an adopted son, Robert J. Alexander, Jr., born February 5, 1929, who was reared by petitioners. The ranch, consisting of 10 or 11 sections of grazing land, and 3 or 4 sections of farming land, carried from 350 to 800 head of cattle through the years 1942 to 1944. The income in question was produced by the sale of cattle and grain claimed to be the property of the son.

On May 8, 1937, when the son was about 8 years old, a bank account of $17.24 was opened for him with the proceeds of small gifts from his parents and other relatives. In 1939, when the son was about 10 years old, his father started him in the cattle business in a small way by giving him a cow and a calf, a custom commonly followed by rancher-parents with their children. The cow and calf were branded with the son's separate brand, established at that time. The calf was sold in March, 1940 for $64.05, and the proceeds added to the son's bank account, giving him a total of $81.29. Through natural increases in his herd from time to time, and through a series of profitable purchases and sales of cattle and grain through the years 1940 to 1943, the son's original small stake had increased by December 31, 1943 to 60 head of cattle, debt-free, most of which he had owned for more than a year. He owed no money at that time, and had a cash balance of $760.79. Loans secured at the bank with which to finance the purchase of cattle from time to time, endorsed by the father but secured by a lien on the son's cattle, had been paid in full with the proceeds of cattle and grain sales. In addition, the son owned 653 acres of grazing land, valued at $10 per acre, given him by his father in September, 1943, and the son also held a lease from a third party on 160 acres of farm land, used for growing wheat.

All cattle purchased by or for the son bore the son's separate brand, established about 1939 when the father gave him the original cow and calf. Separate books were kept for the son's business by petitioners. There was no commingling of the son's business with that of the petitioners, except that all the cattle, along with other cattle owned by the hired hands, grazed in a common herd on the ranch, most of which land was owned by the petitioners, who had a herd of some 350 to 800 head. In return for this, the son not only made available for the same purpose the section of grazing land owned by him, but also performed, without salary, the duties of a ranch hand when he was at home during vacations from school, for which purpose his services were badly needed during 1943 and 1944 when labor was difficult to obtain.

All the sales and financial transactions were either performed or supervised by the father, especially when the son was away at school, but ownership of the property, and the unconditional right to receive the income, were at all times in the son. The son, however, displayed substantial initiative of his own in many of the transactions. The proceeds of sales were usually received by the father, along with the proceeds of sales of his own cattle and grain, and after being properly apportioned by the father according to ownership, the son's share was deposited in the son's separate bank account. Sales of cattle owned by hired hands on the ranch were made in the same manner. The father had authority to draw checks on the son's bank account, and did so, in carrying out transactions for the son. The father purchased all cattle feed needed on the ranch, but the son paid for his share out of his own funds. The father paid the living expenses of the son while at home, and his school expenses while at school

some 300 miles away, during the tax years in question.

The total value of cattle purchased by or for the son during the years 1940 to 1944 was $16,525.88. The total value of cattle sold during that period was $16,727.93. A substantial number of the son's cattle remained unsold. In addition, there were substantial sales of wheat raised on the section of farming land. During this time the son borrowed from, and repaid to, the bank $7,993.30. The son's reported net income for 1943 was $2,881.08, for 1944 $5,939.54. For the same years, petitioners reported an aggregate net income of $37,-084.10 and $34,571.87, from their ranching operations.

The Commissioner attributed to petitioners all income from the son's ventures, except $1,631.30 for the year 1944, concededly earned by the son. Appropriate deficiency assessments were entered against petitioners, which were sustained by the Tax Court. Those decisions are here for review.

Placing great emphasis upon the fact that the son was away from home attending school most of the years in question, and that the father conducted most, if not all, of the transactions of buying and selling through which the income was realized and the son's holdings increased from time to time, and pointing to the son's youth as evidence of his inability to conduct these transactions for himself, and to the fact that the father endorsed the son's notes at the bank when substantial loans were necessary in connection with the transactions, the Tax Court reached the conclusion that the father, not the son, really "earned" the income in question, within the doctrine of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. See also Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

The son's absence from the ranch, however, while he was away at school, would not alone deprive him of the benefits of the operation of his property by his father during his absence. Both the ownership of the property and unconditional right to receive, retain, and enjoy the income there-from, were indisputably in the son at all times. The father was aiding the son in building up a business for himself which would ultimately make him a productive and independent adult citizen, a practice neither unusual, unnatural, nor evasive, but commendatory.

■ In reaching its decision, the Tax Court too narrowly interpreted the rule stated in Lucas v. Earl, supra, that income is taxable to him who earns it, losing sight of the principle that income may be "earned" not only by individual personal effort, but also by the employment of invested capital, which may be managed by another person for the benefit of the owner. When the parties are acting in good faith, there is no objection inherent in the fact that owner and manager are members of the same family. Visintainer v. Commissioner of Internal Revenue, 10 Cir., 187 F.2d 519; Henson v. Commissioner of Internal Revenue, 5 Cir., 174 F.2d 846; Edson v. Lucas, Commissioner of Internal Revenue, 8 Cir., 40 F.2d 398. Compare Commissioner of Internal Revenue, v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. The interpretation of the Tax Court also overlooks the statement of the same rule in later cases that the purpose of the revenue laws is the taxation of income to those who earn "or otherwise create the right to receive it and enjoy the benefit of it when paid." Thus the Tax Court erroneously applied the law to the facts found. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

■ We find in the father's vicarious management of the property for his son nothing which justifies visiting the tax consequences of the enterprise upon the father as the "earner" of the income. There is a distinction between managerial control over income producing property with the consent of the actual owner, and the absolute right of control over both the property and the income derived therefrom, which inheres in a valid legal title. The Tax

Court failed to observe that distinction here.

As the son was the owner of the property and unconditionally entitled to receive and enjoy the income in question, the son, not the father, is taxable therefor. The deficiency assessments in question should each be set aside.

Reversed and Remanded.