## WEISS v. JOHNSON.

No. 278, Docket 22713.

United States Court of Appeals
Second Circuit.

Argued June 3, 1953.

Decided Aug. 19, 1953.

Samuel Kalmanash, New York City (Wolfe & Kalmanash and Morley S. Wolfe, New York City, on the brief), for plaintiff-appellant.

Henry L. Glenn, Asst. U. S. Atty., New York City (J. Edward Lumbard, Jr., U. S. Atty., New York City, on the brief), for defendant-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This appeal brings up another aspect of the vexed question of income taxation presented by a "family partnership." Here we have to deal not so much with the existence of such a partnership, but with the distribution of its income among its members. The Commissioner found this unfair and based a deficiency assessment against its principal member on a computation based on a reallocation of the income. The taxpayer paid the assessment and brought this action for refund against the Collector. Trial to the jury resulted in a verdict and judgment for the defendant, from which the taxpayer appeals.

The taxpayer, Philip Weiss, was engaged in the textile manufacturing business from 1929 to 1941 with one Henry Grubel in a corporation named Plaza Mills, Inc., owned by them and their families. The corporation was dissolved on December 1, 1941, and a limited partnership of the former stockholders was formed to operate the business. Plaintiff and Grubel were general partners, with Grubel's daughter Irene, individually and as trustee, and plaintiff's daughters, Miriam, Helen, and Beatrice, as limited partners. This partnership was dissolved as of June 7, 1942, on the death of Henry Grubel; and a new limited partnership was formed of the Weiss family only, who bought out the Grubel interests. The general partners were plaintiff; his son-in-law Bernard Krosney, husband of Miriam; and his son-in-law Samuel Sunshine, husband of Helen. The limited partners were the three daughters, Miriam, Helen, and Beatrice. This partnership operated the business until it was sold out in 1944.

The question presented here arises from the partnership returns filed for the years 1942, 1943, and 1944, and concerns additional taxes assessed against the plaintiff for the taxable years 1943 and 1944. The issue centers particularly about the shares of partnership income allocated to the daughters Miriam and Helen, who contributed only capital, not services, and appeared to be receiving an unusual return on their capital investment. The certificate of limited partnership purported to state the contributions of the limited partners to capital thus: Miriam $21,900, Helen $43,957.36, and Beatrice $65,957.35, and the share of profits each was to receive by virtue of her contribution, viz., Miriam 10%, Helen 15%, and Beatrice 20%. The remainder of the partnership agreement was oral. The examining revenue agent, Frank Clines—who testified extensively at the trial—in his Letter of Transmittal, 4-22-48, recommending a change in the partnership distribution, gave the total capital contribution as $340,561.34, of which plaintiff's interest acquired on dissolution of the earlier partnership was $202,746.63, while Bernard and Samuel each contributed $3,000, and the daughters contributed the amounts set forth above. It appeared that plaintiff was receiving a salary of $20,000 a year, while Bernard and Samuel were each receiving $7,500. Although Beatrice gave her full time to the business she was only 22 in 1942 and was paid no salary. After the above stated percentages of profits to the daughters, the remaining 55% was divided 40% to plaintiff, 10% to Bernard, and 5% to Samuel. Clines stated that the active conduct of the business was by Bernard, Samuel, and Beatrice, plaintiff acting only in an advisory position, since he desired to retire for age and illness.

Since Clines considered capital to be the important factor, he adjusted the limited partners' distribution of profits to conform with their proportionate share of the total capital invested in the business. And as the responsibility of the operation and management rested upon the two general partners, Bernard and Samuel, he proposed a salary to each of $15,000 a year, plus 2% of the profit after salary (instead of the approximately 1% each contributed to the invested capital). Hence his revised distribution of partnership profits was, after deduction of salaries totaling $30,000 a year, plaintiff 58%, Bernard 2%, Samuel 2%, Miriam 6%, Helen 13%, Beatrice 19%. Except for the slight variation in the percentages to Bernard and Samuel noted above, these percentages correspond closely to the percentage contributions to invested capital. This recommendation was adopted and applied to net income of $326,633.34 for 1943 and $176,680.74 for 1944. The total amount of additional taxes for the two years assessed against plaintiff, with interest, was $82,916.27, while the total amount of overassessment in favor of other members of his family was about $53,000, which with their consent was applied against the assessment against plaintiff; and plaintiff paid the balance. Although he originally sued for the full amount assessed against him, he reduced his claim at the trial to the amount he had actually paid in cash, namely, $29,774.99.

At the four-day trial, plaintiff testified extensively as to his need for and the usefulness of the services of Bernard and Samuel because of the condition of the business and the status of his health. He said the ultimate distribution of the profits on a basis of 20% to Beatrice and to each married daughter and her husband was with the idea of equality as the best method to avoid friction in the family and secure the needed services. His counsel took the position that, since Clines had admitted that there existed an actual and bona fide partnership, all issues were settled and no reallocation of the distribution of profits was legally permissible. This is his basic argument on this appeal. Defendant took three major positions of law, which the trial court, after denying motions of each party for a directed verdict, adopted either explicitly or in substantial substance. Since there was ample evidence to support the jury's verdict and since we are not entitled to review the weight of the evidence, we shall turn to the judge's charge and the law he accepted and applied.

The following extract from the judge's charge (which was amplified later

by more detailed references to the testimony) shows his view of the three major propositions urged by defendant. The judge said:

"The burden of proof is upon the plaintiff to satisfy you by a fair preponderance of the evidence that the Commissioner's assessment of the additional taxes against the plaintiff in respect to the partnership income is wrong upon any proper theory; that the plaintiff must satisfy you that both partnerships—the 1941 and the 1942 partnerships—should be recognized for tax purposes as to each of the persons it is alleged are his partners, and, in addition, that the agreed division of profits of each partner, was a bona fide and reasonable one, taking into account all the facts and circumstances."

Hence the first proposition shows that in this action for a refund the burden of proof was on the plaintiff to show that it was an illegal exaction, and that consequently if the Commissioner was right in his ultimate determination there could be no recovery even if the reasons he relied on were wrong. Gowran v. C. I. R., 7 Cir., 87 F.2d 125, 127, affirmed Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; Helvering v. Gregory, 2 Cir., 69 F.2d 809, 811, affirmed Gregory v. Helvering, 293 U. S. 465, 55 S.Ct. 266, 79 L.Ed. 596. So long as the plaintiff cannot demonstrate that the Commissioner has collected too much, there is no unjust enrichment of the government. Stone v. White, 301 U.S. 532, 535, 57 S.Ct. 851, 81 L.Ed. 1265. The second proposition, requiring the plaintiff to show that there was an actual bona fide partnership, merely follows the formula of the leading case of C. I. R. v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. The third proposition, that the division of profits by the partnership was a bona fide and a reasonable one, brings us to the problem we now must discuss. For if not only the bona fides of the partnership as a whole, but also and separately the bona fides of the division of profits made by an actual partnership, may be attacked, the verdict must stand.

This particular question was expressly left open in C. I. R. v. Culbertson, supra, 337 U.S. at page 748, 69 S.Ct. at page 1217: "No question as to the allocation of income between capital and services is presented in this case, and we intimate no opinion on that subject." But in our *per curiam* opinion in Sommers v. C. I. R., 2 Cir., 195 F.2d 680, we recognized at least inferentially the existence of such a power in the taxing authorities and actually the case was remanded for its exercise by the Tax Court. The Bureau of Internal Revenue has asserted the power in one section, quoted in the note,[1] of a long memorandum of 1952 dealing with the Culbertson rule. The defendant asked the judge to

---

1. Mim. 6767, 1952–1 Cum.Bull. 111, 120, 3 CCH 1953 Fed.Tax Rep. ¶1169.3116, p. 16,057:

"7. *Reasonableness of Agreed Division of Profits—Allocation.* A wholly unreasonable agreement as to the sharing of partnership income may be evidence of the absence of bona fide partnership intent and along with other pertinent evidence may invalidate the partnership for tax purposes. Even if a partnership is entitled to recognition for tax purposes under the foregoing and other applicable principles, however, the agreed division of profits should be scrutinized to ascertain whether it involves the donative deflection of income attributable to personal services or the division of other income in disproportion to capital interests of which the recognized partners are accepted as the real owners. If the agreed division of profits does not reasonably accord with ordinary business arrangements of parties dealing at arm's length, considering the respective contributions by the recognized partners of services, skill, credit, and capital of which they are the real owners, it may be appropriate, to make a fair allocation to divide the income in shares to which persons dealing with each other at arm's length would reasonably agree under the particular circumstances, taking into account the relative proportions of the income attributable to services and to capital and all such contributions of the several recognized partners. The allocation of adequate, reasonable salaries to active partners before any other division of profits will frequently provide adequate compensation for their contributions of skill and services, and the ade-

charge in accordance with this statement; but the judge declined, saying that the charge as given sufficiently covered the subject matter. In fact, it had done so, with perhaps more stress on the subjective nature of "intent"—in accordance with the Culbertson statement—than the objective elements set forth in the memorandum would suggest. Compare Slifka v. C. I. R., 2 Cir., 182 F.2d 345. At any rate the result seems sound. Otherwise it would be possible for the dominant partner of a valid bona fide partnership to employ it as an easy method of tax avoidance by giving the other partners shares in the partnership income out of all proportion to any real interest or contribution made by them. No reason is perceived in either law or logic why, if a partnership may be found wholly invalid for a misuse of this business device as an instrument of tax evasion, it may not also be found partially invalid for a like ground. See also Current Income Tax Aspects of Family Partnerships, 36 Va.L.Rev. 357, 368.

Plaintiff makes several objections to trial rulings which we find without merit. The most seriously pressed is that the judge required him also to prove the invalidity of the division of profits of the 1941 partnership (which we have not felt it necessary to depict in detail). His point is that, since he chose to make no issue as to 1941, the defendant cannot inject this into the case. But this is a serious distortion of the case. The 1941 partnership lasted until June 7, 1942; plaintiff's 1942 income was definitely in issue as affecting his 1943 income under the Current Tax Payment Act of 1943, § 6, 57 Stat. 126.

 The admission of charts illustrating visually the effect of various allocations of partnership profits was quite within the judge's discretion. The denied motions for directed verdicts did not take the case from the jury. F.R. 50(a); Starfred Properties v. Ettinger, 2 Cir., 131 F.2d 575. We do not understand the objection to defendant's reference to the limited-partner certificate as an agreement; it was. Cross-examination or comment on charitable contributions apparently designated to the partnership, on the transposition of the higher income of Helen instead of Beatrice on the 1942 return, on the nonproduction of a partnership ledger, on the avoidance of excess profits tax—all seem but routine of such a trial as this. Finally there appears no reason why Revenue Agent Clines should not be permitted to testify as to conversations with plaintiff's accountant and representative, since deceased, with regard to the matters in issue.

Judgment affirmed.

---

quacy and reasonableness of any such salaries allowed by the agreement of the parties should always be considered."

This applies prior to 1951; for later periods I.R.C. § 191, 26 U.S.C., added by § 340(b) of the 1951 Act, governs to provide for the taxation of a distributive share of a partnership to a bona fide owner, by gift or sale of an interest therein. Alexander v. C. I. R., 5 Cir., 194 F.2d 921, 926. The new statute does authorize certain reallocations of profits and, had it been effective, might have been employed against plaintiff here, since much of the daughters' contributions appears to have come originally from him by gift.