**W. T. S. MONTGOMERY, Petitioner,**
**v.**
**COMMISSIONER OF INTERNAL REVENUE, Respondent.**
**No. 15600.**

United States Court of Appeals
Fifth Circuit.
March 7, 1956.

Rives, Circuit Judge, dissented.

John W. Donahoo, William T. Rogers, Jacksonville, Fla., Mitchell, Donahoo & Rogers, Jacksonville, Fla., of counsel, for petitioner.

Carolyn R. Just, Atty. Dept. of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Lee A. Jackson, Atty., Harry Baum, Atty., John Potts Barnes, Chief Counsel, Int. Rev. Service, John M. Morawski, Sp. Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The question presented by this appeal [1] is whether the record warrants the Tax Court's conclusion that taxpayer remained the substantial owner of a business managed and operated by him, despite transfer of legal title to the business assets to his wife, so that the fifty percent portion of the business income ascribed to the wife remained taxable to the taxpayer under Section 22(a) of the Internal Revenue Code of 1939, 26 U.S. C.A. The taxpayer, W. T. S. Montgomery, had, for the years 1946 and 1947, returned and paid taxes on fifty percent of the net income of the business and his wife the other fifty percent. The Commissioner redetermined the tax and assessed all of it against the husband, the Tax Court sustained the Commissioner,[2] and the husband filed this petition for review.

For many years prior to September 6, 1939, petitioner owned and operated as sole proprietor a business known as Jacksonville Blow Pipe Company. On that date one of his employees was involved in an automobile accident resulting in

1. As stated in the Commissioner's brief.
2. By a divided vote, the Tax Court Judge who heard the oral testimony and one other dissenting.

474

the death of a person. Petitioner set about at once, through his attorney, to make a transfer of his business, constituting his chief asset, so as to keep from being wiped out by a possible judgment resulting from said death and to the end that his other creditors might not be left with uncollectible debts.

At the outset, he gave a mortgage to himself as executor of his father's estate to secure an existing indebtedness of $5,-550.03, and this remained of record for something over a year. In the meantime, a $50,000.00 damage suit had been brought against him, and he and his lawyer began considering other plans possibly better adapted to the accomplishment of the stated ends. The lawyer finally advised, and petitioner agreed, that the mortgage should be cancelled, the business conveyed to his father's estate and by the estate to his wife by way of distribution of the estate's assets. This plan was put before the heirs of the estate in a letter from petitioner dated October 1, 1940 and all acquiesced in it. It was finally decided by the lawyer, however, that this circuitous procedure would be avoided by a direct conveyance from petitioner to his wife in consideration of $4,000.00. The wife borrowed $4,000.00 from a corporation owned by members of the husband's family, which was paid to petitioner and used by him in partial liquidation of existing debts.[3]

On October 14, 1940, petitioner executed a deed covering the real estate and a bill of sale covering personal property conveying all of the property and assets of the Blow Pipe Company to his wife, who immediately gave notice to the bank of the transfer with directions that checks be signed by herself, her father, an employee of the business, or her husband. The Collector of Internal Revenue was consulted concerning the tax angles of the transfer. Simultaneously the mortgage originally given the estate was released, the $4,000.00 was received

by petitioner from his wife, and a verbal contract was entered into between the husband and wife under which the husband was employed for an undetermined period to manage the business, for which services he was to be paid fifty percent of its net profits. The conveyances were placed of record October 30, 1940. May 14, 1945, the wife published notices under the Florida "Fictitious Name Statute"[4] that she was the party interested in Jacksonville Blow Pipe Company, and June 13, 1945, registered a declaration with the Clerk of the Circuit Court that her interest therein was one hundred percent. Meanwhile, December 4, 1944, judgment for $35,000.00 had been entered against petitioner in the damage suit, which was settled and satisfied in November, 1945 by the payment of $10,-000.00 which was taken largely from the business and charged against petitioner, who reported the loss in his 1945 income tax return.

Following the transfers above mentioned petitioner continued, under his agreement, to manage the business of the Blow Pipe Company, although, beginning as of the time of the transfers, both the wife and her father exercised a greater measure of control than had been attempted before the transfers. Beginning with the year 1942 and continuing through the tax years, U. S. Treasury Forms 1099 were filed with the Commissioner showing the wife as owner of the business and petitioner as an employee together with the amount paid to him during the respective years. The exact extent to which the wife and her father intervened in the management of the business is the subject of dispute. The husband was an engineer and experienced operator of the blow pipe business while the wife had had little or no business experience. We are asked to reverse the action of the Tax Court in sustaining the Commissioner's determination that all of the income from the business for the two years in question was

---

3. This $4,000.00 was repaid by income from the business beginning a few weeks after the transfer.

4. Title 44 Florida Statutes Annotated, Vol. 22, § 865.09, passed subsequent to the execution of the conveyances.

earned by the husband as owner and operator of the business and that none of the income should be ascribed to the wife.

█ The holding of the Tax Court that the business was not actually and completely transferred to the wife so as to make her the true owner thereof is without support in the evidence. Indeed, a reading of its decision and the Government's brief indicates that both failed to differentiate between title to property, with all of its incidents, and management of the business to which that property was dedicated by its owner. The decisions of this Court have made that distinction clear, but the Tax Court did not grasp nor apply them.

█ Our language in Henson v. Commissioner, 5 Cir., 1949, 174 F.2d 846, 847, supplies the answer to the questions before the Tax Court:

"* * * it is undisputed that after the date of the transfer, which was admittedly a bona fide gift and effective to pass title to the property under Georgia law, that petitioner's wife was the sole and absolute owner of the Company, with no strings attached. She had the right and absolute power to dispose of it by gift, sale, or will. She further had the power to borrow money on account of the business * * *. Under and by virtue of the gift to his wife, petitioner had irrevocably divested himself of all legal title, right, interest, and control[5] over the business, and remained as manager of the company solely at his wife's pleasure. * * *

"* * * This case involves a valid and unconditional gift, com-plete and effectual for all purposes, and is clearly distinguishable from those family partnership tax cases relied upon by the Commissioner. * * *

"The Tax Court has evidently, in its decision, failed to recognize the distinction between actual control over income-producing property with consent of the true owner, and the absolute right of control over both the property and the income derived therefrom which adheres in a valid and legal title. The controlling question in such cases is, therefore, not whether actual control over the property is exercised, but whether the right of control in fact exists; not who earns the income from such property, but who has the right to receive it. * * *

"Every owner of a business, particularly those of limited business experience, has the undoubted right to have it managed by another, even though that person be married to the owner. Moreover, every husband has a legal right to create a valid gift of his property in favor of his wife without being held liable for the income tax thereon, provided, of course, there are no conditions attached which would enable him to retain a legal dominion and control over the property, or to revoke the transfer. * * * Under such circumstances, the income therefrom was taxable to her alone, and not to the petitioner."

The gift involved in the Henson case was made with no greater formality and was established by no clearer proof than the absolute conveyance of the property here involved. Every test defined

---

**5.** The Commissioner attempts to differentiate the Henson case from this one by emphasizing our use there of the word "control". It is obvious that the control referred to there is control of the ownership, use and enjoyment of the property. That construction is confirmed by the words employed later in the opinion: "provided * * * there are no conditions attached which would enable him to retain a *legal dominion and control over the property, or to revoke the transfer."*[4] (Emphasis added.)

Any other construction of the word "control" would be meaningless because the control of the management by the husband in Henson was absolute.

there is applicable here and is met and satisfied by uncontroverted proof. What we said in Alexander v. Commissioner, 5 Cir., 1951, 190 F.2d 753, further illustrates the error of the Tax Court. There was a case where a son had been vested by parental gift with title to certain cattle with respect to which the father furnished all managerial functions. While the son was away attending school some of the cattle were sold, and the Commissioner essayed to look through the form of the transaction to what he conceived to be the substance and to assess the father with the income upon which the son had paid taxes, and the Tax Court affirmed. We rejected that portion of its opinion, using these words, 190 F.2d 755:

"In reaching its decision, the Tax Court too narrowly interpreted the rule stated in Lucas v. Earl, supra, [281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731] that income is taxable to him who earns it, losing sight of the principle that income may be 'earned' not only by individual personal effort, but also by the employment of invested capital, which may be managed by another person for the benefit of the owner. When the parties are acting in good faith, there is no objection inherent in the fact that owner and manager are members of the same family.

"There is a distinction between managerial control over income producing property with the consent of the actual owner, and the absolute right of control over both the property and the income derived therefrom which inheres in a valid legal title. The Tax Court failed to observe that distinction here."

The same failure characterized the actions of the Tax Court in this case. The record contains no proof that the husband ever exercised any control over the property as such, but his control was of operations only, such as would have been exercised by any other manager whom the wife might have employed. To the

same effect as the above cases, see Britt's Estate v. Commissioner, 5 Cir., 1951, 190 F.2d 946, and Simmons v. Commissioner, 5 Cir., 1947, 164 F.2d 220. And we approved those decisions in Wofford v. Commissioner (and reverse title), 5 Cir., 1953, 207 F.2d 749, 752, using this language: "In a similar situation and upon evidence far less compelling than that presented here, we have recognized and given effect to income allocations to the interest in property which created the income."

In the case before us the income redetermined by the Commissioner was produced by property consisting of a building, manufacturing machinery, raw materials and business good will, plus management of the operations to which that property was devoted. The wife owned the property and was taxable with income flowing from its operation and use. Operational management was furnished by the husband, who, under agreement with the wife, was paid an amount equal to fifty percent of the net profits for his services as manager. This alone was taxable to him.

The only way the decision of the Tax Court could be sustained would be to hold that title to the property was not vested in the wife. There was no evidence from which such a conclusion could be reached. Title was transferred by written instruments duly recorded, the bank was notified of the sale of the business, the public was notified by publication of the change in ownership of the business, and there is nothing in the evidence to support the inference that the written instruments transferring the title were not valid and enforceable according to their terms.

From the time of their execution the wife had the absolute right to encumber, sell, or otherwise alienate the property and to dedicate it to any use she might choose. It was liable for her debts and was not liable for the debts of the husband created after the transfer. The circumstances of the transfer and the fact of the relationship between the

parties do not, in any way, destroy or weaken the fact of change of ownership.[6] All of the disputes in the evidence to which the Tax Court seemed to attribute much weight had to do with facts attending day to day management of the business.[7] There is no dispute of the fact that the wife employed the husband to manage the business and that he managed it in the main. Evidence of occasional acts of management control by the wife and her father served to strengthen rather than to weaken the fact of her property rights. There are no facts in evidence which tend to contradict her actual ownership.

The Commissioner redetermined the taxes for the two years involved by disallowing all of the income from the business claimed by the wife, on which she paid taxes, and by assessing the entire income to the husband. This redetermination was based solely upon the rejection *in toto* of the fact of transfer of ownership of the property. The Petition for Review brings before us the legality of what the Commissioner did, and the pleadings frame that as the sole issue we are called upon to determine.[8] For the

6. The reason and motive behind the transfer cannot serve to invest it with illegality if it was actual. The Florida Court refused to recognize the transfer to defeat the claim for wrongful death because the claim existed prior to the sale and the property belonged to petitioner when the claim arose. It was impressed, therefore, with an equitable lien in favor of the death claim and the transfer was fraudulent as to that existing claim. A suit was filed in 1951 (cf. 2 Florida Statutes Annotated Title 6, § 66.16 et seq.) by the wife and against the husband to quiet and confirm title to the property in her—doubtless in an effort to strengthen her position as owner which the Commissioner had challenged by a ninety day letter sent some months before the filing of the suit. It was there adjudged that, as between the parties, title was complete in the wife and that the judgment in the damage suit in 1945 was not to be construed as casting doubt upon that title.

The main additional reason assigned by the Tax Court for rejecting the "so-called arrangements" was the inadequacy of the consideration ($4,000.00) paid by the wife. That criticism is not valid for the husband could have accomplished the same purpose by making a gift to her. Cf. Henson, supra. At all events, it was admitted that the transfer was not made to escape taxes and the change of ownership was *fait accompli* more than five years before these tax returns were made.

7. e.g. That the wife had no experience in managing any business and took no part in the management after the transfer; that she was not a free trader [but she was a "free dealer", 5 Fla.Stat.Ann. Title 6, § 62.40 et seq.]; that city and county licenses continued to be taken in the name of petitioner; that the books fail to show how much of the earnings, credited to the two in a joint account, she had withdrawn; and that the success of the business operation was due "primarily to the knowledge, ability and efforts of the petitioner".

The cases relied upon by the Commissioner, e.g. Gregory v. Helvering, 293 U. S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Commissioner v. Tower, 327 U.S. 280, 66 S. Ct. 532, 90 L.Ed. 670; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L. Ed. 1659; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, and Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, are clearly distinguishable if the distinction is kept in mind between the control of property, with the incidents of title and ownership, and the control of the management of that property dedicated by the owner to certain business operations.

8. The attorney for respondent thus stated the issues to the Tax Court at the opening of the trial:

"May it please the Court, this case involves an issue of whether the Commissioner of Internal Revenue is correct in determining that no bona fide transfer was made of a certain going business by Petitioner, W. T. S. Montgomery, to his wife, Mrs. W. T. S. Montgomery, with the result that the net profit of such businesses are taxable against the Petitioner.

\* \* \* \* \* \* \*

"The other issues which were raised by the pleadings as to non-allowable deductions from income has been disposed of by Paragraphs 22 and 23 of the stipulation of facts, which will be filed herein."

reasons here stated, the decision and judgment of the Tax Court are reversed and the cause is remanded for proceedings in conformity with this opinion.

Reversed.

RIVES, Circuit Judge (dissenting).

The Tax Court pointed out that in his letter to his brother and sisters proposing the transfer of the assets of the business to his wife, petitioner had said,

"* * * frankly, the business is not worth much without me to run it. It is only my expert knowledge of the blow pipe business that has enabled this business to survive when every other sheet metal shop in Jacksonville is in such bad financial condition that they have no credit standing with any of the supply houses * * *."

Further, that,

"The petitioner testified that the assets of the business were worth very little without the benefit of his expert advice, knowledge and skill on blow pipe installations. He said he would not have given his services to anybody else for as little as 50 percent of the profits."

Still further, the Tax Court found that, "The success and earnings of the business before and after October 14, 1940 and during the taxable years were due primarily to the knowledge, ability and efforts of the petitioner. Capital and assets were not material income producing factors." Even the two dissenting judges of the Tax Court conceded that, "* * * it is true that the success of the business to a considerable extent was attributable to the technical knowledge and skill of the petitioner and that capital was a secondary attribute * * *."

The following further parts of the Tax Court's opinion are amply supported by the evidence:

"Irene testified, 'I do not operate the business at all. I'm not an engineer and I don't have anything to do with the actual running of it.' She had no office, rarely went to the place of business, and had no experience in managing any business. She mentioned 'decisions about policy' but gave no instance in which she had made any such decision and was extremely vague on the subject. Some effort was made to show that Irene's elderly father took over some executive authority and duties on her behalf after October 14, 1940. The record as a whole shows, however, that he did not. He had been employed in the business only a few years at that time and described his duties as 'largely keeping the books. He received $50 per week and continued to keep the books and receive that same wage after October 14, 1940. He had no experience or ability to qualify him as an executive in the business, restricting the scope of the petitioner's freedom of control, and he never restricted that control in any important way, so far as the record shows.

"It is not clear from the record that Irene ever withdrew earnings of the business for her personal use or benefit."

In brief, this record, to my mind, reveals a transfer of a business from the petitioner to his wife not only in fraud of his creditors, but never meant to make any material difference in economic control or right of control as between the parties, a mere pretense and sham. I am in full agreement with the findings of fact and opinion of the Tax Court.

Still further, the burden was on the petitioner not only to prove that his wife owned the assets of the business, but also to prove that capital was a material income-producing factor. Even if the wife were treated as the owner of the business properties, the half and half income allocation agreed upon with her husband was patently disproportionate to their respective contributions. If we consider that capital played some material part, the petitioner's skill, ability and efforts were primarily responsible. If the wife be treated as the owner of the assets, I would still think that the peti-

tioner has not carried his burden to sustain a fifty percent division of the profits. Weiss v. Johnson, 2 Cir., 206 F.2d 350. I, therefore, respectfully dissent.