358 F.2d 342
 Pauline W. ACH, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
ESTATE of Ernest M. ACH, Deceased, Pauline W. Ach, Sole Legatee, and Pauline W. Ach, Surviving Wife, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
The ACH CORPORATION, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
The ACH CORPORATION, Respondent.
 Nos. 16154-16156.
 No. 16229.
 United States Court of Appeals Sixth Circuit.
 March 30, 1966.
 
 William R. Seaman, Cincinnati, Ohio (H. J. Siebenthaler, Ronald E. Heinlen, Cincinnati, Ohio, on the brief; Frost & Jacobs, Cincinnati, Ohio, of counsel), for Ach.
 William A. Friedlander, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for Commissioner.
 Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and CECIL, Senior Circuit Judge.
 CECIL, Senior Circuit Judge.
 
 
 1
 These cases are before the Court on petitions for review of decisions of the Tax Court of the United States. The petitioners and taxpayers are: Pauline W. Ach in docket No. 16,154, Estate of Ernest M. Ach, deceased, Pauline W. Ach, sole legatee and Pauline W. Ach, surviving wife in docket No. 16,155 and the Ach Corporation in docket No. 16,156. The Commissioner of Internal Revenue, respondent herein, determined deficiencies in income tax against the above named taxpayers and they brought actions in the Tax Court for a redetermination of those deficiencies.
 
 
 2
 The claimed deficiencies grow out of the inter-related dealings between Ernest M. Ach, his wife, Pauline W. Ach, and their two sons, Roger and Laurence. These dealings disclose a family plan the obvious purpose of which was to avoid or minimize the income tax of the husband and wife. It is perfectly proper for individuals and corporations to arrange their business affairs so as to minimize taxes and in the cases now before us the transactions were open and aboveboard and no fraud is claimed. The question presented here is whether the transactions involved came within any statutory prohibitions of the Internal Revenue Code.
 
 
 3
 The facts are fully stated in the Findings of Facts and Opinion of the Tax Court reported at 42 T.C. 114. Briefly stated, the pertinent facts of the family transactions may be summarized as follows: Prior to and through mid 1953, the son Roger owned all of the stock (300 shares) of Rising Sun Creamery Company, an Ohio Corporation. The stated purpose of the corporation was to deal in dairy products. Roger had operated the business at a substantial loss each year and at the end of the year 1953, the cumulative indebtedness amounted to $282,700. This indebtedness was evidenced by notes with interest payable to Ernest Ach, the father, who had covered the yearly losses.
 
 
 4
 At the time now under consideration and for a number of years prior thereto, Pauline operated a dress shop in Cincinnati under the name of Vogues and Vanities. This was, and had been, a successful business, netting profits of $25,000 to $30,000, a year, with the indication that profits were rising.
 
 
 5
 On April 23, 1953, the corporation changed its name to the Ach Corporation. It also changed its stated corporation purposes from a dairy products business to broad, general purposes which would include the operation of the dress business of Vogues and Vanities. The dairy business was discontinued prior to August 1, 1953. On or about July 14, 1953, Roger, pursuant to his parents' suggestion, transferred to his brother Laurence, without consideration, 149 shares of the corporation's common stock. All of the shares of the Corporation were transferred to Pauline by Roger and Laurence, without consideration, in May 1959. At this time the corporation's net operating loss was no longer available as a carry over against income.
 
 
 6
 On or about August 1, 1953, Pauline became president, treasurer, and chairman of the board of directors of the Ach Corporation. She was not then a shareholder of record. On that date, at a special meeting of the Board of Directors, she offered to sell to the Corporation her Vogues and Vanities business for $30,705.57, to be paid for by a demand note of the Corporation without interest. The agreed purchase price was the book value of the business. The offer was accepted and the transfer was made.
 
 
 7
 Pauline continued to manage the business under the name of Vogues and Vanities. There was no ostensible change in the conduct of the business. Pauline received no salary from either the business or the corporation. Roger and Laurence, the sole shareholders of the corporation, were engaged in other business ventures not related to the dress business. They took no active part in the operation of Vogues and Vanities. The profits of the business, under Pauline's continued management, were channeled through the corporation and were used first to pay to Pauline the purchase price of the business as evidenced by the corporation's demand note to her and second to pay the corporation's notes to Ernest. The profits thus realized by the corporation were offset against the carry over losses of the dairy business and no income tax was paid for the years in question.
 
 
 8
 The respondent took the position that the transfer should be disregarded as fiction and that all of the profits of Vogues and Vanities should be allocated to Pauline under Section 482, Title 26, U.S.C. He also ruled that the loss carryover should be disallowed under Section 269, Title 26, U.S.C. The deficiencies were determined on this basis. The petitioners challenged these rulings and brought their actions in the Tax Court for a redetermination of the tax.
 
 
 9
 The Tax Court did not follow the respondent on the first ruling above mentioned. It found that, "The corporation was actually in existence, and there was a genuine transfer of assets to it that were actually used in the conduct of the dress business." While we might take a different view if this question were initially before us, we cannot say that this finding is clearly erroneous. Rule 52(a) F.R. Civ.P., Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.
 
 
 10
 Judge Raum of the Tax Court wrote a comprehensive opinion covering the issues raised by the petitioners in that court. (42 T.C. 122) We are in accord with the opinion of Judge Raum and find no need to repeat the discussion of the issues before the Tax Court.
 
 
 11
 The petitioners argue before this Court that the amount of profits allocated to Pauline was not based on any intelligible method of calculating the income attributable to her and that the Court's decision was wholly arbitrary. We are of the opinion that there was ample evidence to support the decision of the Tax Court. Under the evidence, we think that the amount of profits allocated to Pauline was minimal and that it might well have been greater. In Cohen v. Commissioner of Internal Revenue, 266 F.2d 5, 12, C.A. 9, the court said:
 
 
 12
 "We neither state nor imply that the Tax Court's redetermination must be predicated upon precisely established income and expense figures. Since Cohan v. Commissioner [of Internal Revenue], 2 Cir., 39 F.2d 540, it has been the recognized rule that absolute certainty is not required. It is sufficient if the Tax Court makes as close an approximation as it reasonably can. The Tax Court's permissible leeway in this regard is the same as that which the Commissioner originally had."
 
 
 13
 In Bodoglau v. Commissioner of Internal Revenue, 230 F.2d 336, 340, C.A.7, the court said:
 
 
 14
 "It is the function of the trier of the fact to weigh all the elements properly considered in the valuation and to translate them into dollars and cents. (Citations omitted) Nor is it essential that there be testimony of the specific figure fixed by the Tax Court."
 
 
 15
 We conclude that the Tax Court properly allocated seventy per cent of the profits of Vogues and Vanities to Pauline W. Ach.
 
 
 16
 Another question before the Tax Court and now before us is whether the losses sustained by the corporation prior to 1953 in the operation of its creamery and dairy business may be deducted as a net operating loss deduction in the corporation's tax years 1955-1958. The corporation claimed the right to make these deductions from the profits derived from the operation of the dress business in 1953 and subsequent years.
 
 
 17
 The Tax Court sustained the respondent in disallowing these deductions. The Tax Court held that the deductions were properly denied under and by virtue of Section 269(a) of the Revenue Code of 1954. The pertinent part of this section reads as follows:
 
 
 18
 "If — (1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation,
 
 
 19
 * * * * * *
 
 
 20
 and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation."
 
 
 21
 The petitioners claim that this statute is not applicable for the reason that Pauline was not the record owner of the stock. The Tax Court found that she was the beneficial owner of all of the stock and as such owner she was within the coverage of the statute.
 
 
 22
 That the transactions here involved were for the purpose of tax avoidance cannot be successfully controverted. If Pauline had become the record owner of the stock on August 1, 1953, at the time she became president, treasurer, and chairman of the board of directors of the corporation, there could be no question about the application of the statute.
 
 
 23
 We consider first whether Pauline was the beneficial owner of the stock. This is a question of fact and we are of the opinion that there was ample evidence to support the finding of the Tax Court that she was in fact the beneficial owner of all of the stock of the corporation.
 
 
 24
 On or about July 14, 1953, Roger, the sole owner of all of the stock of the Ach Corporation, transferred 149 shares of the 300 shares to his brother Laurence. This transfer was made pursuant to the parents' suggestion, without consideration. Laurence had had nothing to do with the business of the corporation prior thereto and had nothing to do thereafter with the dress shop business, operated through the corporation, except to serve as a director. On August 1, 1953, Pauline became president, treasurer, and chairman of the board of directors of the Ach Corporation. On the same day she offered to sell her business to the corporation for its book value. She took in payment the demand note of the corporation, which had no assets except some land which was a remnant of the dairy business. It was hopelessly insolvent by reason of liabilities in the form of notes payable to her husband. There was no ostensible change in the operation of the dress business and Pauline continued in full control and management of the dress shop without any assistance from her sons, the record shareholders. Finally, about one year later, she paid herself the sale price of the business out of the profits of the business earned through her management. Then when the corporation had served its purpose as a vehicle of tax avoidance, the sons transferred to their mother, at her request, all of the stock of the corporation.
 
 
 25
 This was indeed a thinly veiled transaction. It would be difficult to conceive of a more perfect example of control and beneficial ownership being in one person. There was no apparent reason for the transfer of the business of Vogues and Vanities to the corporation, other than tax avoidance. There was some testimony on behalf of the petitioners tending to show other purposes, but this was discredited, and we think justifiably so, by the trier of the facts. We cannot accept petitioners' claim that the Tax Court confused ownership of property with management of property. Each case must be judged upon its own facts. The cases[1] cited in petitioners' brief can be distinguished on their facts from the case at bar.
 
 
 26
 The Tax Court, having found that beneficial ownership of the stock was in Pauline, held that the word "ownership" in Section 269, above quoted, included beneficial ownership. We agree. The essential thrust of this statute is to prevent sham or fictitious transactions for the purpose of avoiding the payment of income taxes. Control is defined as stock ownership with 50 per cent of the voting power of a corporation. We understand this to mean the quantum of voting power necessary for control, not necessarily literal record ownership.
 
 
 27
 In the case before us where willing and obedient sons transferred the record title of shares pursuant to the suggestions and requests of their parents, we conclude that Pauline had one hundred per cent control of the corporation.
 
 
 28
 The Tax Court was correct in disallowing the carry over of the net operating losses against the profits of Vogues and Vanities.
 
 
 29
 The judgment of the Tax Court is in all respects affirmed.
 
 
 30
 Since this Court affirms the Tax Court in its allocation of income between Pauline and the corporation the cross-appeal of the respondent in docket No. 16,229 is moot and it is hereby dismissed.
 
 
 
 Notes:
 
 
 [1]
 Montgomery v. Commissioner of Internal Revenue, 230 F.2d 472, C.A.5; Lawton v. Commissioner of Internal Revenue, 164 F.2d 380, C.A.6; Henson v. Commissioner of Internal Revenue, 174 F.2d 846, C.A. 5; Apt v. Birmingham, D.C., 89 F.Supp. 361