Harry DICKSTEIN, Plaintiff,

v.

Joseph T. McDONALD, Defendant.

Samuel DICKSTEIN, Plaintiff,

v.

Joseph T. McDONALD, Defendant.

Civ. A. 3887, 4117; 3888, 4116.

United States District Court
M. D. Pennsylvania.
March 20, 1957.

Ernest D. Preate, Scranton, Pa., Richard S. Doyle, Jules G. Korner, III, Washington, D. C., Herman H. Krekstein, Philadelphia, Pa., for plaintiffs.

Robert J. Hourigan, U. S. Atty., Scranton, Pa., for defendant.

WATSON, District Judge.

These actions were brought to recover refunds of income taxes which, plaintiffs allege, were collected from plaintiffs contrary to law for the years 1944, 1945 and 1946. The four cases were tried together by the Court without a jury.

From the stipulations of fact and the legal evidence, the Court makes the following

Findings of Fact

1. Plaintiffs Harry Dickstein and Samuel Dickstein are citizens of the United States of America and residents of the City of Scranton, Commonwealth of Pennsylvania, and were such in the years 1944, 1945 and 1946. Each plaintiff filed federal income tax returns for each of the above-mentioned years, upon the cash and calendar year basis, with defendant, who was the duly commissioned, qualified and acting United States Collector of Internal Revenue for the Twelfth (12th) Collection District of Pennsylvania with his offices in the City of Scranton, Pennsylvania, and was such at the time these suits were instituted.

2. In 1913, plaintiff Samuel Dickstein organized a business of manufacturing pants and overalls under the name of Anthracite Overall Manufacturing Co. in the City of Scranton, Pennsylvania. In 1916, plaintiff Harry Dickstein was admitted as a partner; in 1920, Joseph M. Harris was admitted as a partner and, in 1941, Herbert Dickstein, a son of plaintiff Harry Dickstein, was admitted as a partner.

3. In 1924 plaintiffs and Joseph M. Harris formed a partnership with Theodore Koppelman to manufacture pants and trousers under the firm name of Lackawanna Pants Manufacturing Company, in which plaintiffs and Joseph M. Harris had a two-thirds (⅔) capital interest and Theodore Koppelman had a one-third (⅓) capital interest.

4. On January 3, 1927, plaintiffs entered into a new written agreement of partnership with Joseph M. Harris and Theodore Koppelman for the business of Lackawanna Pants Manufacturing Company. Under this agreement, each plaintiff owned a capital interest in the busi-

582

ness equal to sixteen and two-thirds (16⅔) per cent of the total.

5. Theodore Koppelman was the only partner who devoted his full-time services to the business and only he received a salary in addition to the return on his capital investment in the business.

6. The practice among the partners was to allow portions of the profits, derived from the operation of the business, to remain in the partnership to provide capital needed for the development of the company.

7. In 1942 Koppelman and plaintiffs discussed a plan under which trusts would be established for the benefit of various members of their families.

8. Koppelman and plaintiffs agreed to the creation of the trusts and, after discussing the plan with Joseph M. Harris, agreed with Harris' suggestion that ·members of their families, rather than an outside institution, act as trustees.

9. On March 20, 1942, as of February 2, 1942, each plaintiff, as a grantor, executed certain trust indentures. Each agreement established separate trust funds for the beneficiaries and trustees were also designated in the indentures. Under the trust indentures executed by plaintiff Harry Dickstein, he and Eva Dickstein, his wife, were named as trustees. Eva Dickstein was also a beneficiary as were Herbert L. Dickstein, a son, Miriam Raker, a married daughter, and Shirley E. Dickstein, a daughter. Plaintiff Samuel Dickstein and Howard Dickstein, his son, were co-trustees of the trusts established by Samuel Dickstein. Howard was also a beneficiary with George and Stanley Dickstein, his brothers. Each grantor assigned to the trusts a share of his capital interest in the Lackawanna Pants Manufacturing Company in the amount of $52,000, which sum was to be divided equally among the various beneficiaries.

10. The trustees were obligated, under the terms contained in the indentures, to manage the trust property without in any way limiting the rights and privileges of the general partners to operate and conduct the business as they had done theretofore.

11. The trustees were vested with almost complete discretion in the administration of the trust estates. They had the power to continue to hold the trust estates in the partnership; to sell or to dispose of the trust estates; to join in and become a party to any reorganization, consolidation or capital readjustment of any firm or corporation in which the trust funds were invested, or to participate in any protective plan or agreement for the trust estates; and they had the power to do any and all things necessary, in the exercise of their duties as trustees, for the proper management of the trusts.

12. The trust agreements prescribed the method of distribution of the income of the trusts to the beneficiaries and the trustees were permitted, in their discretion, to pay to the beneficiaries such sums as they should determine out of the corpus of each trust estate.

13. The purpose which motivated the creation of the trusts was a desire, on the part of the grantors, to establish independent estates for the designated beneficiaries and to provide for their financial security.

14. In order to aid the development of the business, the partners had allowed a portion of the profits each year to remain in the partnership. To ensure against a change of this policy, the trust agreements provided that the trustees could not demand the distribution of all profits.

15. On March 20, 1943, new written agreements of partnership were entered into by the partners. The new agreement reduced to writing the oral agreement of February 2, 1942.

16. The new partnership consisted of plaintiffs, Koppelman and Harris, individually, and Harry Dickstein and his wife Eva as co-trustees for the benefit of Eva, Herbert and Shirley Dickstein and Miriam Raker, and Samuel Dickstein and Howard Dickstein as co-trustees for the benefit of Howard, George and Stanley Dickstein. Koppel-

man was to devote his full time to the operation of the business. The management of the business was specifically restricted to plaintiffs. Harris and Koppelman, individually and not as trustees.

17. The percentage interests of the plaintiffs and of the trusts established by them under the terms of the new partnership agreement were as follows:

| | |
|---|---|
| Samuel Dickstein | 2–3/ 9% |
| Howard Dickstein Trust | 4–7/ 9% |
| George Dickstein Trust | 4–7/ 9% |
| Stanley Dickstein Trust | 4–7/ 9% |
| Harry Dickstein | 2–4/12% |
| Eva Dickstein Trust | 3–7/12% |
| Herbert Dickstein Trust | 3–7/12% |
| Miriam Raker Trust | 3–7/12% |
| Shirley Dickstein Trust | 3–7/12% |

18. The capital account of each plaintiff, as it appeared in the books of the Lackawanna Pants Mfg. Co., was charged with a gift of $52,000, and a separate capital account was set up in the name of each plaintiff, as trustee, showing the distribution of this amount among the trusts. The books reflected correctly the interest which each trust owned in the partnership.

19. The gifts of $52,000 made by each plaintiff were reported to the Collector of Internal Revenue and, thereafter, the value of each gift was increased by the Collector to $78,266.38. Tax deficiencies in gift taxes in the amount of $3,365.96 were assessed against each plaintiff and were paid by each.

20. Partnership books were kept, and returns of net income were filed, on the accrual basis. Partnership returns were filed for the fiscal years ended December 31, 1944, 1945 and 1946 reporting the distributive shares of income of plaintiffs and the trusts as follows:

| | 1944 | 1945 | 1946 |
|---|---|---|---|
| Harry Dickstein | $ 7,831.66 | $12,064.30 | $11,288.82 |
| Eva Dickstein Trust | 15,745.65 | 19,049.90 | 17,858.75 |
| Herbert Dickstein Trust | 15,745.64 | 19,049.90 | 17,858.75 |
| Miriam Raker Trust | 15,745.64 | 19,049.90 | 17,858.75 |
| Shirley E. Dickstein Trust | 15,745.64 | 19,049.90 | 17,858.75 |
| Samuel Dickstein | 7,831.68 | 12,064.45 | 11,288.82 |
| Howard L. Dickstein Trust | 20,994.19 | 25,399.83 | 23,811.64 |
| George Dickstein Trust | 20,994.19 | 25,399.83 | 23,811.64 |
| Stanley N. Dickstein Trust | 20,994.20 | 25,399.81 | 23,811.64 |

21. Federal fiduciary income tax returns were filed with the Collector of Internal Revenue for the years 1944, 1945 and 1946 by Harry and Eva Dickstein, Trustees, and by Samuel and Howard Dickstein, Trustees, and in these returns there was reported as respective distributive shares of the partnership income for each of the trusts the following amounts:

| | 1944 | 1945 | 1946 |
|---|---|---|---|
| Eva Dickstein Trust | $19,049.90 | $19,049.90 | $17,858.75 |
| Herbert Dickstein Trust | 19,049.90 | 19,049.90 | 17,858.75 |
| Miriam Raker Trust | 19,049.90 | 19,049.90 | 17,858.75 |
| Shirley E. Dickstein Trust | 19,049.90 | 19,049.90 | 17,858.75 |
| Howard L. Dickstein Trust | 25,399.83 | 25,399.83 | 23,811.64 |
| George Dickstein Trust | 25,399.82 | 25,399.82 | 23,811.64 |
| Stanley N. Dickstein Trust | 25,399.81 | 25,399.81 | 23,811.64 |

22. The beneficiaries of the Dickstein trusts each filed income tax returns for the years 1944, 1945 and 1946 and reported as their income from the alleged trusts the following amounts:

| | 1944 | 1945 | 1946 |
|---|---|---|---|
| Eva Dickstein | $19,049.90 | $19,049.90 | $17,858.75 |
| Herbert Dickstein | 19,049.90 | 19,049.90 | 17,858.75 |
| Miriam Raker | 19,049.90 | 19,049.90 | 17,858.75 |
| Shirley E. Dickstein | 19,049.90 | 19,049.90 | 17,858.75 |
| Howard L. Dickstein | 20,153.04 | 20,153.04 | 23,811.64 |
| George Dickstein | 25,399.81 | 25,399.81 | 23,811.64 |
| Stanley N. Dickstein | 25,399.81 | 25,399.81 | 23,811.64 |

23. During the calendar years 1944, 1945 and 1946 the following distributions of cash were made by the partnership to the trusts, inclusive of interest on capital accounts:

| | 1944 | 1945 | 1946 |
|---|---|---|---|
| Eva Dickstein Trust | $ 5,526.83 | $22,895.30 | $ 2,109.47 |
| Herbert L. Dickstein Trust | 5,526.83 | 22,895.30 | 2,109.47 |
| Miriam Raker Trust | 5,526.83 | 22,895.30 | 2,109.47 |
| Shirley E. Dickstein Trust | 5,526.83 | 22,895.30 | 2,109.47 |
| Howard L. Dickstein Trust | 7,369.12 | 30,527.08 | 2,812.62 |
| George Dickstein Trust | 7,369.11 | 30,527.09 | 2,812.62 |
| Stanley N. Dickstein Trust | 7,369.10 | 30,527.09 | 2,812.62 |

24. The net taxable income reported, and the tax paid by each plaintiff for each of the years 1944, 1945 and 1946 was as follows:

| | Harry Dickstein | | Samuel Dickstein | |
| Year | Income Reported | Tax Paid | Income Reported | Tax Paid |
|---|---|---|---|---|
| 1944 | $69,502.41 | $42,242.76 | $78,930.58 | $47,741.53 |
| 1945 | 49,928.98 | 27,171.74 | 51,065.14 | 27,663.85 |
| 1946 | 53,470.35 | 24,438.08 | 50,228.41 | 22,919.48 |

Upon examination of the income tax returns filed by plaintiffs for the calendar years 1944, 1945 and 1946, and of the partnership returns of income filed by Lackawanna for the fiscal years ended January 31, 1944, 1945 and 1946, the Commissioner of Internal Revenue determined that no portion of the partnership income for said periods was taxable as income of the trusts or of the beneficiaries of the trusts, but was properly taxable income to plaintiffs and that the distributable share of partnership income taxable to each of the plaintiffs for the said years was as follows:

| | 1944 | 1945 | 1946 |
|---|---|---|---|
| Harry Dickstein | $77,432.30 | $89,516.60 | $83,081.04 |
| Samuel Dickstein | 77,432.34 | 89,516.60 | 83,081.04 |

25. As a result of said determination, the Commissioner thereafter assessed against plaintiff Harry Dickstein deficiencies in income tax with interest thereon in the amounts as follows:

| | 1944 | 1945 |
|---|---|---|
| Deficiency in Tax | $56,672.92 | $66,971.98 |
| Interest | 12,617.10 | 10,891.66 |
| | $69,290.02 | $77,863.64 |

| | 1946 |
|---|---|
| Deficiency in Tax | $54,570.41 |
| Interest | 5,600.57 |
| | $60,170.98 |

Plaintiff Harry Dickstein was required to pay, and did pay, to Joseph T. McDonald, Collector of Internal Revenue, on account of said determination and assessments, the amounts of $37,723.42, for 1944; $47,766.83 for 1945 and $32,062.69 for 1946.

26. On or about July 26, 1949, plaintiff Harry Dickstein filed with the Collector of Internal Revenue claims for refund of said income taxes and interest with interest thereon, in the amounts of $37,723.42 for 1944; $47,766.83 for 1945 and on or about November 10, 1950 he filed claims for refund of said income taxes and interest for 1946, with interest thereon in the amount of $53,387.50.

27. As a result of said determination, the Commissioner thereafter assessed against plaintiff Samuel Dickstein deficiencies in income tax with interest thereon in the amounts as follows:

| | 1944 | 1945 | 1946 |
|---|---|---|---|
| Deficiency in Tax | $56,848.42 | $67,768.65 | $54,272.76 |
| Interest | 12,656.17 | 11,021.38 | 5,570.02 |
| | $69,504.59 | $78,791.03 | $59,842.78 |

Plaintiff Samuel Dickstein was required to pay and did pay to Joseph T. McDonald, Collector of Internal Revenue, on account of said determination and assessments the amounts of $36,890.40 for 1944; $55,009.97 for 1945 and $31,890.95 for 1946.

28. The trustees with Joseph M. Harris and Theodore Koppelman did really and truly join together for the purpose of carrying on the business of Lackawanna Pants Manufacturing Company and sharing in its profits or losses or both.

29. On or about August 22, 1949, plaintiff Samuel Dickstein filed with the Collector of Internal Revenue claims for refund of said income taxes and interest in the amounts of $36,890.40 for 1944, $55,009.97 for 1945 and $53,418.58 for 1946, with interest thereon.

30. The Commissioner of Internal Revenue rejected and disallowed said claims of plaintiffs.

31. None of the income derived from the business which was distributed to the beneficiaries was ever returned to the plaintiffs or either of them nor was any of it expended for the benefit of the plaintiffs or either of them.

32. On February 1, 1946, the Lackawanna partnership was dissolved and the assets were transferred to a new corporation, the Lackawanna Pants Mfg. Co. Each member in the old partnership, including the Dickstein trusts, received stock in the new corporation in proportion to their capital interests in the old partnership.

33. On or about October 23, 1946 the trustees sold the shares of stock which the trusts held in the Lackawanna Pants Mfg. Co. to Theodore and Flora Burros Koppelman. The monies derived from the sale of this stock now form the corpora of the trusts.

### Discussion

These actions were brought to recover certain income taxes paid by plaintiffs

which, they allege, were collected from them contrary to law for the years 1944, 1945 and 1946.

Plaintiffs, together with Joseph M. Harris and Theodore Koppelman, were partners in a business known as the Lackawanna Pants Manufacturing Company, hereafter called Lackawanna. Each plaintiff owned a sixteen and two-thirds (16⅔) per cent capital interest in the business. In 1942 plaintiffs executed certain trust indentures for the benefit of certain designated beneficiaries. The corpus of each trust consisted of part of the capital interest owned by each plaintiff in Lackawanna. Plaintiffs paid the gift taxes assessed against the transactions and the donees noted the receipt of the gifts in their income tax returns.

In 1943 plaintiffs entered into a new partnership agreement with Harris and Koppelman. Under this agreement the trustees of the various trusts, acting on behalf of the trusts, were admitted as partners in Lackawanna.

The agreement of 1943 reduced to writing an oral agreement under which the partners had been operating since 1942.

The profits of the business were distributed according to the terms of the agreement but the Commissioner of Internal Revenue refused to recognize, for tax purposes, the membership of the trustees in the partnership. The Commissioner ruled that the income of Lackawanna which had been attributed to the trusts for the years 1944, 1945 and 1946 was taxable as income of the plaintiffs. Plaintiffs thereupon paid additional taxes in compliance with the Commissioner's ruling and now seek refunds of these taxes.

██ It is well-established that trustees may be members of a partnership and a trustee will be recognized as the real owner of the partnership interest unless the settlor retains such control as to remain the owner of that interest. Commissioner of Internal Revenue v. Brodhead, 18 T.C. 726, affirmed 9 Cir., 210 F.2d 652. Therefore, it must be

decided whether the trustees named in the trust instruments were the real owners of the partnership interests or whether the plaintiffs remained the owners because of the control which they are alleged to have retained over the corpora of the trusts.

Under the terms of the original partnership agreement, plaintiffs and Harris agreed that Koppelman would devote his time and energy to the management of the business. The agreement of 1943 continued this arrangement and plaintiffs' interest in the business was confined to the capital which they had invested therein.

In Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, the Supreme Court of the United States reaffirmed the position taken by that Court in Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 536, 90 L.Ed. 670. In the Tower case the Court stated that the question whether a family partnership is real for income-tax purposes depends upon

"whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' Drennen v. London Assurance Co[rp.], 113 U.S. 51, 56, 5 S.Ct. 341, 28 L.Ed. 919; Cox v. Hickman, 8 H.L.Cas. 268. We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes."

In the Culbertson case the Court quoted with approval the above paragraph from the Tower case and continued [337 U.S. 733, 69 S.Ct. 1214]:

"The question is not whether the services or capital contributed by a partner are of sufficient importance

to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent —the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted."

The Court believes that the application of these criteria will resolve the problems presented by the instant cases.

The Court further believes that the plaintiffs and the trustees, with Harris and Koppelman, did "really and truly" join together for the purpose of carrying on the business of Lackawanna and sharing in its profits or losses or both.

Defendant, who argues against the bona fides of the partnership, seeks to support his argument by placing great emphasis upon the control which plaintiffs exerted over the business to the exclusion of control by the trustees. In Theodore D. Stern, 15 T.C. 521, the Tax Court said:

"He (the settlor) retained control in himself but that is of no particular significance since limited partners normally have no part in the control or management of the business."

This pronouncement of the law was cited with approval in Bartholomew v. Commissioner, 8 Cir., 186 F.2d 315.

■ An examination of the trust agreements reveals that the gifts were absolute and unconditional, with no possibility that the corpora of the trusts would revert to the settlors. And the donees, according to their testimony, have enjoyed all the benefits derived from their interests in the partnership. This testimony was uncontradicted and a finder of fact cannot arbitrarily disregard undisputed and uncontradicted testimony of unimpeached persons. Miller v. Commissioner, 6 Cir., 203 F.2d 350.

The partnership agreement provided for a method of distribution of the profits of the business which placed the control of the income attributable to the trusts out of and beyond the control of the plaintiffs. This Court finds that there was a scrupulous adherence to the terms of the agreement and that the restrictions placed upon the trustees by the agreement were imposed to ensure the perpetuation of certain business practices to which the management of Lackawanna had long subscribed.

■■ The degree of control required to shift tax liability, particularly where income is produced by property rather than services, is, in some cases, difficult to determine. However, where such control exists, tax liability attaches to ownership. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Hoeper v. Tax Commission, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248. It has been determined that, in the instant cases, ownership resides in the trustees and, therefore, the tax liability on the income attributable to the trusts resides in the trustees and not in the plaintiffs.

The Court concludes that the trustees were bona fide members of the partnership and were entitled to share in the profits produced by that partnership in accordance with the terms of the agreement under which the trusts became partners. Plaintiffs, therefore, should be entitled to the relief which they seek.

### Conclusions of Law

1. Plaintiff Harry Dickstein made valid, completed gifts in trust of portions of his capital interest in the Lackawanna Pants Manufacturing Company. The gifts were made for the benefit of

his wife, Eva, and his children, Herbert, Miriam and Shirley.

2. Plaintiff Samuel Dickstein made valid, completed gifts in trust of portions of his capital interest in the Lackawanna Pants Manufacturing Company. The gifts were made for the benefit of his children, Howard, George and Stanley.

3. Plaintiff Harry Dickstein and Eva Dickstein, his wife, served as co-trustees of the trusts established by Harry Dickstein.

4. Plaintiff Samuel Dickstein and Howard Dickstein, his son, served as co-trustees of the trusts established by Samuel Dickstein.

5. The trusts established by Harry Dickstein and Samuel Dickstein were bona fide partners in the Lackawanna Pants Manufacturing Company during the fiscal years 1944, 1945 and 1946, and were such from February 2, 1942.

6. The trusts were entitled to receive, during the fiscal years 1944, 1945 and 1946, a share of the profits of the business of the Lackawanna Pants Manufacturing Company proportionate with their capital investments in that company.

7. Each trust established by plaintiff Harry Dickstein was entitled to receive, as its share of the partnership income for the fiscal years 1944, 1945 and 1946, an amount equal to 3⁷⁄₁₂ per cent of the profits of the partnership for those years. Each trust established by plaintiff Samuel Dickstein was entitled to receive, as its share of the partnership income for the fiscal years 1944, 1945 and 1946, an amount equal to 4⅖ per cent of the profits of the partnership for those years.

8. The income taxes assessed against, and paid by, plaintiffs for the years 1944, 1945 and 1946 should be reduced in an amount which will reflect the redistribution of the partnership profits for the fiscal years 1944, 1945 and 1946 in accordance with the findings set forth in this opinion.

9. The Collector of Internal Revenue for the Twelfth Collection District of Pennsylvania did erroneously and unlawfully assess against and collect from the plaintiffs, Harry Dickstein and Samuel Dickstein, certain income taxes for the years 1944, 1945 and 1946 as contended by the plaintiffs in these actions and same should be refunded to the plaintiffs with proper interest.

10. An appropriate order will be filed.