Florence **COSTANTINO**, Appellant,

v.

**COMMISSIONER OF INTERNAL
REVENUE.**

No. 19155.

United States Court of Appeals,
Third Circuit.

Argued May 20, 1971.

Decided June 24, 1971.

William C. McClure, Pittsburgh, Pa. (Robert G. MacAlister, Frank E. Coho, Pittsburgh, Pa., on the brief), for appellant.

Richard S. Halberstein, Tax Division, Dept. of Justice, Washington, D.C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Grant W. Wiprud, Attys., Tax Division, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

We are asked to decide in this case whether the Tax Court erred in finding that a taxpayer did not have a sufficient "economic interest" in certain Pennsylvania coal deposits to qualify for the depletion deduction provided by the Internal Revenue Code of 1954. 26 U.S.C.A. §§ 611, 613.[1]

The taxpayer, Mrs. Costantino, is engaged under the name of Costantino Company in the business of strip-mining coal. On November, 1, 1954, Mrs. Costantino entered into a written contract with the Reitz Coal Company (Reitz) for the strip-mining of coal owned or leased by Reitz in Somerset County, Pennsylvania. Reitz, a Pennsylvania Corporation, at the times in question was engaged in the mining and sale of coal.

The 1954 contract between Reitz and Costantino stated that Reitz was the owner or lessee of grade "B" coal underlying certain parcels of land, and provided that Costantino was to strip-mine grade "B" coal underlying such land and to deliver the coal to Reitz. Mrs. Costantino was not required to mine the coal to exhaustion but only to excavate the coal as far as "practicable." Reitz, in turn, promised to pay Costantino $2.60[2] per ton of coal delivered. Although the contract set forth no expiration date, by its terms it was terminable at will by either party upon one month's notice. On March 1, 1965, the 1954 contract was slightly modified to refer to grade "C" coal as well as grade "B"[3] coal, and its substance reaffirmed.

During the years 1961–1963, Mrs. Costantino mined coal from land owned or leased by Reitz. In 1961 the coal mined was divided between grade "B" and grade "C" coal and in 1962 and 1963 most of the coal mined was grade "C." Mrs. Costantino utilized her own equipment and hired her own crew of workers to operate the equipment, and the cost of the equipment was depreciated on her tax returns for the years in question. Also, Mrs. Costantino claimed on her tax returns the statutory ten percent coal depletion allowance.[4] The Commissioner

---

1. Jurisdiction is conferred upon this court by 26 U.S.C.A. § 7482.

2. During the relevant period Reitz paid Mrs. Costantino somewhat more than the fee stipulated by the written 1954 contract:

| Period | Price Per Ton |
| --- | --- |
| January 1961-May 1961 | $3.25 |
| June 1961 | 3.15 |
| July 1961-November 1962 | 3.25 |
| December 1962-June 1963 | 3.15 |
| July 1963-October 1963 | 3.40 |
| November 1963 | 3.00 to 3.75 |
| December 1963 | 3.00 |

3. The record, though sketchy in this regard, indicates that the difference between grade "B" and grade "C" coal depends on the ash and sulphur content. Both types of coal are mined in a similar manner.

4. 26 U.S.C.A. § 611. "Allowance of Deduction for Depletion.
   (a) General Rule—In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing tax-

of Internal Revenue disallowed the claim for the statutory depletion allowance and assessed Mrs. Costantino accordingly. For 1962 she was assessed a deficiency of $15,939.55 and for 1963 a deficiency of $16,448.13. Thereafter, Mrs. Costantino filed a petition for redetermination in the Tax Court. The Tax Court affirmed the Commissioner's assessment.

On appeal from the Tax Court's decision, Mrs. Costantino contends that its finding that the 1954 written contract controlled her business relations with Reitz during the years 1961–1963 is clearly erroneous.[5] At the trial before the Tax Court, Mrs. Costantino presented evidence tending to prove the existence of an *oral* contract between Reitz and herself which superseded and modified the 1954 written contract.[6] Moreover, Mrs. Costantino argues that the 1954 written contract was in any event inapplicable to the mining operation during 1961–1963, because during those years grade "C" coal was mined—whereas the written contract, as noted earlier, referred only to grade "B" coal. Nevertheless, the Tax Court found as a fact that the mining operation was carried on pursuant to the written contract.[6a] The Tax Court based its ultimate finding upon the fact that the process by which grade "C" coal is extracted is substantially identical to that of mining grade "B" coal. Further, the Tax Court considered the 1965 "extension" of the 1954 written contract and a letter written to the Director of Internal Revenue, Pittsburgh, Pennsylvania, by the manager of Costantino Company, Don Batiste, stating that the only contract between the Costantino Company and Reitz was the "1954 written agreement" and the "1965 extension." Under these circumstances, we cannot hold to be clearly erroneous the Tax Court's finding of fact that the 1954 contract controlled the relationship between the parties.

able income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under *regulations prescribed by the Secretary or his delegate.* For purposes of this part, the term 'mines' includes deposits of waste, or residue, the extraction of ores or minerals from which is treated as mining under section 613(c). In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this section for subsequent taxable years shall be based on such revised estimate."

26 U.S.C.A. § 613. "Percentage Depletion.

(a) General Rule—In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). * * *

"(b) Percentage Depletion Rates—The mines, wells and other natural deposits, and the percentages, referred to in subsection (a) are as follows:

(4) 10 percent * * * coal, * * *"

5. The scope of appellate review of the decision of the Tax Court is limited by the general principle that all findings of facts made by the Tax Court and all inferences drawn by it from these facts are binding upon the appellate courts unless "clearly erroneous." Imbesi v. C.I.R., 361 F.2d 640 (3rd Cir. 1966) ; *see* C.I.R. v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) ; Simon v. C.I.R., 285 F.2d 422 (3rd Cir. 1960).

6. It is significant that Mrs. Costantino does not contend that the alleged oral agreement might not have been terminated at will by either party. It is doubtful that she could successfully so contend. The notes of testimony tend to reveal that the alleged oral contract, if it did in fact exist, was terminable at will, as was the 1954 written agreement.

6a. The Tax Court found as a fact that "[t]he only deviation from the 1954 agreement * * * were the coal lands mined by petitioner for Reitz and the amount paid petitioner for each ton of coal mined and delivered," but such "deviations were contemplated by the agreement."

■ Mrs. Costantino asserts that the Tax Court "may not disregard \* \* \* uncontroverted and [un]impeached testimony \* \* \*,"[7] referring to the testimony of her witnesses who asserted the existence of an oral contract. The rule which she cites is not, however, applicable in the present case, because, as we have seen, there was evidence before the Tax Court which would justify its decision not to credit the proffered testimony to the effect that the existence of an oral agreement superseded and replaced the written one.

Mrs. Costantino also asserts that under Pennsylvania law the contracts with Reitz provided her with a fee simple interest in the coal beds, and consequently she was eligible for the coal depletion allowance. Such claim is subject to serious doubt. To support her analysis of Pennsylvania law, Mrs. Costantino refers to Smith v. Glen Alden Coal Co., 347 Pa. 290, 32 A.2d 227 (1943); Brown v. Haight, 435 Pa. 12, 255 A.2d 508 (1969), and School District of Borough of Shenandoah v. City of Philadelphia, 367 Pa. 180, 79 A.2d 433 (1951). However, the contracts in those cases relating to the right to extract minerals are distinguishable from the present contract, because the present contract was terminable at will and the contracts considered in the foregoing cases were not so terminable. Moreover, Mrs. Costantino did not have a duty to mine until the coal beds were exhausted, which apparently is one of the hallmarks in Pennsylvania, a fee simple interest in minerals. Smith v. Glen Alden, supra, 32 A.2d at 232.

■ In any event, controlling decisions of the Supreme Court indicate that federal, not state, law governs eligibility for the depletion allowance. In Palmer v. Bender, 287 U.S. 551, 557–558, 53 S. Ct. 225, 227, 77 L.Ed. 489 (1933), the Supreme Court noted:

"Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. \* \* \* Thus, we have recently held that the lessor is entitled to a depletion allowance on bonus and royalties, although by the local law ownership of the minerals in place passed from the lessor upon the execution of the lease."[8]

■ Hence, the touchstone of eligibility for a depletion allowance is whether the claimant of the allowance has acquired "an economic interest in the coal in place" and not the characterization of the relevant interest by the state where such interest is located. Paragon Jewel Coal Co. v. C.I.R., 380 U.S. 624 at 633, 85 S.Ct. 1207, 14 L.Ed.2d 116; Palmer v. Bender, supra, see Whitmer v. C.I.R., 443 F.2d 170 (3rd Cir. filed May 20, 1971).

■ The Congressional purpose of the statutory depletion allowance is to compensate the owner of wasting assets, such as mineral deposits, for the portion exhausted so that the owner's capital remains unimpaired, and to prevent the unfair taxing of the return of capital as ordinary income. United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 81, 80 S.Ct. 1581, 4 L.Ed.2d 1581 (1960); see Paragon Jewel Coal Co. v. C.I.R., su-

7. To support this proposition, Mrs. Costantino refers to the following cases:
    International Shoe Co. v. F.T.C., 280 U.S. 291, 299, 50 S.Ct. 89, 74 L.Ed. 431 (1929); Imbesi v. C.I.R., 361 F.2d 640 (3rd Cir. 1966); Boggs & Buhl v. C.I.R., 34 F.2d 859, 860 (3rd Cir. 1929); Shorter v. Adler, 103 U.S. App.D.C. 311, 258 F.2d 163, 165 (1958); Wener v. C.I.R., 242 F.2d 938 (9th Cir. 1957); Wooster Rubber Co. v. C.I.R., 189 F.2d 878 (6th Cir. 1951);

Blackmer v. C.I.R., 70 F.2d 255 (2nd Cir. 1934); Dickstein v. McDonald, 149 F.Supp. 580 (M.D.Pa.1957).

8. Likewise, in Helvering v. Bankline Oil Co., 303 U.S. 362, 367–368, 58 S.Ct. 616, 82 L.Ed. 897 (1938) the Supreme Court reiterated that an "economic interest" does not embrace an economic advantage gained through a contractual relation, in the absence of a capital investment in the mineral deposit.

*pra,* 380 U.S. at 631, 85 S.Ct. 1207 (1965). With such purpose in mind, the Supreme Court has formulated criteria to determine qualifications for the depletion allowance. Paragon Jewel Coal Co. v. C.I.R., *supra,* 380 U.S. at 633–634, 85 S.Ct. 1207, quoting Parsons v. Smith, 359 U.S. 215, 225, 79 S.Ct. 656, 663, 3 L.Ed.2d 747 (1959):

> "(1) that [the contract miners] investments were in their equipment, all of which was movable—not in the coal in place; (2) that their investments in equipment were recoverable through depreciation—not depletion; (3) that the contracts were completely terminable without cause on short notice; (4) that the landowners did not agree to surrender and did not actually surrender to [the contract miners] any capital interest in the coal in place; (5) that the coal at all times, even after it was mined, belonged entirely to the landowners, and that [the contract miners] * * * were not to have any part of the proceeds of the sale of the coal, but, on the contrary, they were to be paid a fixed sum for each ton mined and delivered * * *; and (7) that [the contract miners], thus, agreed to look only to the landowners for all sums to become due them under their contracts."[9]

Measuring the facts of the present case against the *Paragon* standard, we agree with the Tax Court that Mrs. Costantino is ineligible for the statutory depletion allowance. Mrs. Costantino's investment was not in the coal itself but solely in the mining equipment which she depreciated on her income tax returns. The agreement between Mrs. Costantino and Reitz did not require her to mine the coal beds to exhaustion, and the agreement was terminable at the will of either party without cause. Moreover, the Tax Court found as a fact that Reitz had not surrendered a capital interest in the coal beds to Mrs. Costantino. Finally, Mrs. Costantino was required to deliver all the coal extracted to Reitz, and she was able to look only to Reitz for payment. Under these circumstances, we agree with the decision of the Tax Court that Mrs. Costantino lacked the requisite economic interest in the coal in place to qualify for the statutory depletion allowance.

Furthermore, we can perceive no meaningful difference between the case here and our recent decision of Whitmer v. C.I.R., *supra,* which would appear to control the present appeal. In *Whitmer* we said, "[The] right on the part of the lessor to terminate [at will] would appear to be fatal to a lessee's ability to claim the depletion deduction, because no right to extract until exhaustion of coal has been granted." 443 F.2d at 170.

Accordingly, the decision of the Tax Court will be affirmed.

---

9. In accordance with this standard, the Commission of Internal Revenue has formulated the following regulation: 26 C.F.R. § 1.611–1

"(b) Economic interest. (1) Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber. An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production. For example, an agreement between the owner of an economic interest and another entitling the latter to purchase or process the produce upon production or entitling the latter to compensation for extraction or cutting does not convey a depletable economic interest. * * *"

We are mindful of the great weight to be accorded treasury regulations and that they must be followed unless they are plainly inconsistent with the revenue statutes. C.I.R. v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948).