## MILLER v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### Nos. 11551, 11552.

United States Court of Appeals
Sixth Circuit.

March 19, 1953.

Lee C. McCandless, Butler, Pa. (Lee C. McCandless, Butler, Pa., on the brief), for petitioners.

S. Dee Hanson, Washington, D. C. (Charles S. Lyon, Ellis N. Slack and S. Dee Hanson, Washington, D. C., on the brief), for respondent.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

These cases come again before us after remand and subsequent rehearing before the Tax Court. See Miller v. Commissioner, 6 Cir., 183 F.2d 246. A comprehensive statement of the facts may be found in our prior opinion. This appeal is taken from the Tax Court's decision holding that the taxpayers, Sam H. Miller and Florence Miller, in making alleged transfers of portions of their interests in their partnership to themselves, as trustees for the benefit of their three minor children, did not intend to form a real business partnership with the children, or with themselves, as trustees for the children, and, therefore, that the children's twelve trusts are not to be recognized as bona fide partners for income tax purposes, with the result that all of the income from the partnership, for the taxable year 1941, was attributable and chargeable to the taxpayers, under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a).

Prior to the making of the above named trusts, Sam H. Miller and Florence R. Mil-

ler, his wife, as copartners, owned equal interests of $60,000 each in a drug store business. During the year 1940, the Millers had lost a prominent location for one of their stores in Butler, Pennsylvania, when a large chain store corporation had acquired the lease. At that time, they felt it was necessary to secure another location in that city, and, in making arrangements to purchase a drug store, they called on Mr. Miller's father, W. R. Miller, for financial assistance. Thereafter, during the fall of 1940, Mr. and Mrs. Miller had many talks with W. R. Miller on the subject, and it was finally agreed among all of them that the elder Miller would invest $15,000 in the business in order to purchase the drug store in question, subject to certain conditions. In the first place, this sum of $15,000 was to be used to secure interests of $5,000 to each of the three children of Sam H. Miller and Florence Miller. At that time, these children were William, aged eleven, Samuel, aged ten, and Barbara, aged eight. Mrs. Miller was also the mother of a boy, John Siebert, aged sixteen, by a prior marriage. In addition to securing interests for the three children, as above mentioned, the elder Miller was concerned about what might happen to them in the case of the death or remarriage of either of their parents. His purpose was to insure the most substantial provision for the children, in so far as he was able. After many consultations, the elder Miller required, in addition to providing three trust interests in the partnership for the children in the amount of $5,000 each, that Sam H. Miller and Florence Miller set up trusts for the children out of their own interests in the business in such a way that each of the children would have an interest of 20% in the partnership business, with the result that each of the children and their parents would each be the owners of a one-fifth interest in the business. Mr. and Mrs. Miller agreed to this proposition. They both were possessed of sources of income from an entirely different enterprise. After the understanding was entered into between W. R. Miller and Sam H. Miller and his wife, Florence, the elder Miller instructed them to consult their attorneys and reduce the agreements to writing. They, accordingly, called upon Myron Ullman, an attorney of Youngstown, Ohio, and after a drafting and preparation of agreements that extended over a period of four or five months until they were satisfactory to the parties, the final drafts were eventually executed, as follows:

On December 31, 1940, the first trust agreement was entered into by Sam H. Miller and Florence R. Miller, as donors, whereby each donor placed an interest in the partnership in trust for each of the three children, making six trusts in all, valued at $4,000 each.

A new partnership agreement dated January 1, 1941, was executed, reciting that the partnership, which was formerly owned by Sam H. Miller and Florence R. Miller, was now owned one-fifth by Sam H. Miller, one-fifth by Florence R. Miller, one-fifth in trust for William R. Miller II, one-fifth in trust for Samuel H. Miller, Jr., and one-fifth in trust for Barbara J. Miller.

On January 2, 1941, Sam H. Miller and Florence R. Miller, as donors, by separate agreements, recited that W. R. Miller was investing $15,000 additional capital in the partnership, in trust for his three grandchildren, thus raising the value of the new partnership to $135,000, and further recited that the Millers were placing additional interests in the partnership in trusts for each of their three children, making an additional six trusts, which, with the prior trusts, amounted to a total of twelve trusts, giving each child a one-fifth interest in the business, valued at $27,000 each.

On January 17, 1941, W. R. Miller became the donor in a trust agreement in which it was recited that on January 1, 1941, he had discussed with his son the advisability of enlarging the business by acquiring a new store, and had agreed to invest $15,000, thereby acquiring a $15/135th interest, and had instructed his son to prepare the appropriate agreement so that he might give the interest in trust to the children of Sam H. Miller and Florence R. Miller. This agreement, by reference, incorporated the applicable provisions of the first trust instrument entered into by Sam H. Miller

and Florence Miller dated, as above mentioned, December 31, 1940.

It appears from the evidence that several days prior to the execution of the first trust instrument above mentioned, at a meeting, on December 21, 1940, of the Mercer Water Company, which was apparently owned by the members of the Miller family, a motion was adopted in which it was unanimously resolved that Sam H. Miller, Florence R. Miller, and Sam H. Miller and Florence R. Miller, Trustees for the Trust Estates held for William R. Miller II, Samuel H. Miller, Jr., and Barbara Jeanette Miller, be authorized to assume, as of January 1, 1941, certain loans of Sam H. Miller and Florence R. Miller. At this meeting, the President of the company, W. R. Miller, was present. As of the date of the meeting, however, Sam H. Miller and Florence R. Miller had not yet set up the trusts in favor of their children, the action being afterward ratified. The incident is here mentioned, however, as indicating that some time before any of the trust agreements was executed, W. R. Miller, Sam H. Miller, and Florence Miller proceeded upon the assumption that the parents were acting as trustees for their children, and that the trusts were at this time in the contemplation of all of the parties.

The trusts in question were irrevocable; and neither Sam H. Miller nor Florence Miller had any right therein to exercise, and they never attempted to exercise any dominion or control over the interests in the partnership represented by the trusts, except in their fiduciary capacity as trustees. Although the Millers were authorized to use income from the trusts up to the total income for any one year for themselves as compensation as trustees, this was provided because, as Mrs. Miller testified, one could not, in the running of such a drug business, tell whether he would need the money in case the business started "going backwards." In any event, such right to compensation was not without limit. Compensation for services as a trustee could not have exceeded, in this case, what was reasonable under the circumstances, and a control over such matters as compensation of trustees is exercised by courts of equity to which the beneficiaries of the trusts could resort in case of arbitrariness, oppression, or excessive payment or withdrawal of compensation. It is to be said, moreover, in the case before us, that the trustees have not, during the entire period since the trusts were first created in 1940, taken any compensation whatever for their services which were of an important managerial nature, and as a result of which the business in question became most successful. Moreover, they have taken no profits or income whatever out of the business represented by their own shares therein, but have continued to devote it all to the success of the enterprise. Their own income is drawn from an entirely different business undertaking.

On the former appeal, we were primarily concerned with the question whether the husband and wife were bona fide partners, and decided that they were, contrary to the findings of the Tax Court. However, although we remanded the case for findings as to the intent of the parties as to the children's trusts, we observed that the rights retained in the trusts by the Millers enabled them to continue to use the corpus and income of the trusts in the business exactly as though they were owners, without the right of the beneficiaries to receive any distribution until the termination of the trusts after the death of the petitioner, and that the petitioner and his wife could take for themselves all of the income from the trusts until their termination, for their compensation as trustees. We further commented that respondent's argument was persuasive when he contended that under such circumstances, it could reasonably be considered that the benefits from the trusts, directly or indirectly retained by the petitioner and his wife, blended imperceptibly with the normal concepts of full ownership, and also when he contended that the transfer to the children of real partnership interests was not intended.

Whatever misgivings were suggested as to the validity of the trusts in our former opinion, it is to be said that, in view of the fact that we did not pass upon the question, such suggestion now appears ill considered and improvident, especially in the light of

the present record, after remand and the introduction of further testimony. Moreover, such expression of the view of the court undoubtedly misled the Tax Court as to what the basis was, upon which it appeared we were resolved to found our ultimate conclusion in this regard. The fact is that the rights retained in the trusts by the Millers did not enable them to use the corpus and income as though they were owners, but limited them to exercising over the trusts only the rights of trustees. We proceed, then, to the question whether the findings of the Tax Court in the case on remand are sustained by substantial evidence.

■ In considering the facts as found by the Tax Court and determining whether they are sustained by substantial evidence, Judge Simons, speaking for this court, in Lawton v. Commissioner, 6 Cir., 164 F.2d 380, said that it was "out of such gossamer threads of circumstance that the findings and conclusions of the Tax Court are woven, and it becomes our duty to determine whether findings and conclusions are based upon substantial evidence as that phrase has repeatedly been defined by the Supreme Court, particularly in Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 198, 59 S.Ct. 206, 217, 83 L.Ed. 126, wherein it was said, 'substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" 164 F.2d page 383. The court continued: "We are aware, of course, that the Tax Court is not required, at all events, to believe the testimony of witnesses, or even to accept at face value documents offered in evidence, but it appears to be well settled that the fact finder may not arbitrarily disregard undisputed and uncontradicted testimony of unimpeached persons where he has already found facts which lend a flavor of truthfulness to their assertions. Hughes v. Commissioner, 5 Cir., 153 F.2d 712; Bardach v. Commissioner, supra [6 Cir., 90 F.2d 323]; Voltz v. Treadway & Marlatt, 6 Cir., 59 F.2d 643. As so well expressed by the late Judge Denison in Rookwood Pottery Co. v. Commissioner, 6 Cir., 45 F.2d 43, 45, 'when the proofs so introduced remain unchallenged by contrary proofs or by destructive analysis, it was the duty of the commissioner to decide the issue in accordance with the proof then appearing before him; and it was, we think, the duty of the board to take the same view.'"

The pertinent evidence in the case, as it now stands before us, is to the effect that the trust arrangements for the children were first suggested by their grandfather, W. R. Miller, when Mr. and Mrs. Sam Miller asked him for financial assistance in purchasing the new drug store in Butler, Pennsylvania. It appears that in planning provision for the children, the grandfather wanted to bring about the division of the drug store partnership into five interests in which each child would have an interest equal to that of each parent; that after numerous consultations, the grandfather and the parents of the children agreed to such an arrangement; that upon the directions of the grandfather, the parents consulted a lawyer over a period of four or five months; and that, finally, trust instruments and a partnership agreement were prepared and drafted by the lawyer and executed by the parties to carry such arrangement into effect. The dates of these various instruments are not the same, but are closely related in time—December 31, 1940, January 1, 1941, January 2, 1941, and January 17, 1941; and they were interrelated by the unquestioned testimony of the Millers as to the conversations and agreements between them and W. R. Miller, by the events leading up to the execution of the documents, and the recitals therein disclosing that they were connected and dependent upon each other, and were the consummation of a general agreement and understanding between W. R. Miller, Sam H. Miller, and Florence R. Miller, for the benefit of the children. Everything was done to give effect to the agreement to make the children equal partners with their parents in the business. Sam H. Miller and Florence Miller immediately canceled the right to do business in their own names and refiled in the proper offices of the various county clerks where their stores were located certificates showing that the owners of the business were themselves and their

354

three children. The trust agreements were filed, as required, with the Secretary of the Commonwealth of Pennsylvania; statements of disclosure of the name of the owners of the business were filed in the districts where the drug stores were located, in accordance with the Harrison Narcotic Law; and registration was made with the Treasury Department of the trust estates in application for tax stamps for narcotics.

The Tax Court found that the trusts for the children represented by the investment of $15,000 by W. R. Miller in the business were valid on the ground that the trusts originated from outside capital, and that the trusts set up by Mr. and Mrs. Miller were invalid. But the fact that parents donate their own interests in a business to trusts for their children does not thereby invalidate them even though no outside, original, or new capital has been contributed to the business. It was a most natural thing for the grandfather to wish to make provision for his grandchildren; and there is no question that his contribution of $15,000 to the business was the central fact of the case and the inducing cause for Mr. and Mrs. Miller to enter into the agreement to share the business equally with their children. It was also the most natural thing in the world for them to enter into the agreements with the grandfather to make this provision for their own children. Human experience teaches that the concern of parents over the financial security of their children is often greater than concern for their own security and enjoyment of the fruits of their labors.

It appears that neither Mr. nor Mrs. Miller is a druggist or pharmacist. The evidence discloses that both are indefatigable in mercantile pursuits, and undoubtedly are expert in business affairs and in managerial capacity. Their three children, however, are all students at a pharmacy college, preparing to follow the business of druggists, which may indicate that the inducement of giving them an interest in the business has stimulated them to study and prepare themselves in this field of endeavor. If the Millers executed these trust instruments for the benefit of their children, for their financial security, and to give them an in-

terest in the drug business and an incentive to engage therein, these trusts are valid, and it follows that the Millers thereby intended to form a real business partnership with the children, or with themselves, as trustees for the children. We are of the opinion that the evidence clearly discloses that such was their intent, and that the proofs being unchallenged by contrary proofs or by destructive anaylsis, there is no substantial evidence to support a contrary finding.

In accordance with the foregoing, the case is remanded to the Tax Court for further proceedings consonant with this opinion.