Abraham **GOLDBERG**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 15279.

United States District Court E. D. New York.

June 28, 1957.

Diamond & Golomb, New York City, for plaintiff, by Aaron Diamond, New York City, of counsel.

Leonard P. Moore, U. S. Atty., for the Eastern Dist. of New York, Brooklyn, N. Y., by Myron Friedman, Asst. U. S. Atty., Long Beach, N. Y., and Jerome S. Hertz, Tax Division, Dept. of Justice, Washington, D. C., of counsel, for the United States.

BYERS, District Judge.

In this case the plaintiff seeks a refund of his individual federal income tax for the year 1945, and the correct amount is conceded to be $4,106.67 and not the larger sum demanded in the complaint.

The facts are not in dispute, and the controversy turns upon whether the plaintiff and his wife, having created trusts for their two children which resulted in the formation of a partnership between them and the trustee for each child, brought into existence such a partnership as required recognition as such by the Commissioner of Internal Revenue.

The cause has been clearly and fairly presented by both sides, and the court is indebted to counsel for the concise manner in which they have presented their contentions in their respective briefs.

The plaintiff, Abraham Goldberg, and his wife, Shirley, had operated for many years a wholesale business in hotel china in corporate form; in January, 1941 the corporation was liquidated, and the husband and wife continued the business in the form of a partnership, known as Trenton Hotel China Co.

In 1944 their two children, Eugene and Robert, were of the respective ages of 19 and 16; the former was then about to enter military service, and the latter was a student in school or college. The sons lived with their parents who were their sole support.

In December of that year, the Goldbergs, in consultation with their attorney and an accountant, formed the purpose of creating an irrevocable trust for the benefit of each child; that object was embodied in two trust agreements in which Mrs. Goldberg's brother, now deceased, one Horowitz, was named as trustee.

In order to effectuate such purpose, Abraham Goldberg withdrew $20,000 from his share of the partnership capital and placed it in the hands of the trustee; Mrs. Goldberg withdrew $15,000 and also added $5,000 of her personal funds, whereby the trustee came into possession of two sums of $20,000 each.

An agreement was entered into creating a new partnership, of which Abraham and Shirley Goldberg and the trustee were the members; the latter contributed the two said separate $20,000 funds to the capital of the new partnership.

According to the articles, the partnership term was to continue until December 31, 1950. The Goldbergs could make withdrawals against their capital account provided that the result thereof would be not to diminish their combined capital beyond one and one-half times the two capital accounts of the trustee.

In the event of such withdrawals by the Goldbergs, the trustee was empowered to make proportionate withdrawals for each trust account.

Profits were to be distributed according to the percentage of capital of each partner, namely, the trustee for Eugene was entitled to the percentage that his capital at the beginning of the year bore to the total capital of all the partners, and similarly as to Robert.

Abraham Goldberg was to receive 60% of the balance, and Shirley 40%; all profits left in the business were to be credited to the respective capital accounts.

During 1945, the trustee's share of the profits was $10,656 as to each trust; Abraham's was approximately $41,000, and Shirley's $27,000.

The only cash withdrawals by the trustee in 1946 were for the purpose of paying federal and state income taxes and the trustee's commissions. There were other items received by the trustee, namely, interest on a mortgage and interest on United States Government bonds. Those items need not be further identified for present purposes.

Neither beneficiary of the trust rendered any services to the partnership during the year 1945, and the trustee's participation in the business was confined to consultations with the firm's accountant, and with the Goldbergs, concerning the business affairs of the partnership.

Both Abraham Goldberg and Shirley took the same active parts in the conduct of the business as they had for better than twenty years prior to the taxable year in question.

In November, 1945, the trustee organized Shir-Gold Realty Corporation and purchased half of the capital stock for each of the two trusts, namely, $1,500 in cash. That corporation purchased from a third unrelated person, the premises in which the business enterprise was conducted; in August of 1946 the trustee purchased an outstanding purchase money mortgage against the property for $15,000, one half being assigned to each trust.

In that same year, part of the partnership business was turned over to Trenco Glass & Silver Co., which had been organized by the Goldbergs in 1944. That company was capitalized for $75,000, of which the Goldbergs contributed $45,000, and the trustee $30,000, representing a $20,000 share for Eugene and $10,000 for Robert.

The partnership was dissolved on June 30, 1946 and a partial distribution of capital was made to the beneficiary Eugene, who had become of age; the trust for Robert continued until 1950 when a new partnership was formed for the purpose of admitting Robert. Both sons are now engaged in the business with their parents.

Certain aspects of the partnership agreement were:

Only Mr. and Mrs. Goldberg were entitled to sign checks drawn on the partnership account.

The combined capital amounts of the two trusts were never to exceed 40% of the entire partnership capital funds.

Dissolution before expiration of the partnership term could be accomplished only by the action of partners owning 60% of the capital.

Without objection, evidence was received concerning the developments subsequent to 1945 of this business enterprise, in the belief that thereby the actual intent of the Goldbergs at the time that the new partnership was brought into existence, could be the more completely understood than if such evidence had not been received.

The importance of the question of intent is referred to in the case upon which both sides rely, Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, at page 743, 69 S.Ct. 1210, 93 L.Ed. 1659.

The developments were, that when Eugene had completed his military service and become of age in 1946, he was admitted to the partnership and became an active participant in its affairs; he received a distribution of $13,782.40 from

the trustee, to which he added enough to bring his contribution to the capital of the partnership to the sum of $15,000.

In 1950 Robert's trust had acquired $15,833.23 which became his contribution to the capital of the partnership, of which he likewise then became an active member.

Thus it appears that the plan which was formulated and carried into effect in 1945 had for its long-range object the continuation of the partnership which Mr. and Mrs. Goldberg had conducted, and its enlargement by the admission of their sons into the firm as each should reach his majority. Since both sons were minors in 1945, they could not at that time become partners, and the plan which has been described of providing for their financial participation in the earnings of the partnership through the medium of the trust agreements, can be thought of as a legal expedient adopted in order to effectuate in 1945 as nearly as possible, that which would have been feasible if each son had then been of full age.

This means that the introduction into the partnership of a trustee for each of the sons, was intended to accomplish a substantial and commendable purpose, rather than as a device to make it appear that the actual earnings of Abraham and Shirley Goldberg should be camouflaged in order to avoid the payment of the federal income tax applicable to each.

If the foregoing is correctly reasoned, it would seem that the question for decision is whether a family partnership was constituted or composed of the parties who "in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner of Internal Revenue v. Culbertson, supra, 337 U.S. at page 742, 69 S.Ct. at page 1214.

In analyzing the testimony in the light of the foregoing requirement, the following considerations seem to be important:

The Goldberg business had been conducted for many years by Abraham and Shirley as a partnership; thus there was no shift from a corporate enterprise in 1945.

The ultimate introduction of Eugene and Robert which has been referred to above, was a natural and probable future occurrence, and since it was then not capable of fulfilment, the legal expedient adopted seemed to provide the best available method of accomplishment.

The fact that the trustee's contribution of capital was made from funds most of which Abraham and Shirley withdrew from the partnership for that purpose "does not necessarily weigh against the taxpayer's case." See Miller v. Commissioner, 6 Cir., 203 F.2d 350.

It is true that the trustee is not shown to have made any significant contribution to the partnership business in the sense that he helped to direct the day by day transactions of its affairs; or that he otherwise brought to bear a trained participation in the business of the partnership; however, he successfully performed his duties as trustee to the benefit of his beneficiaries, and his investments of the trust property inured to their advantage.

The Government's argument that the admission of the trustee as a partner lacked "any business purpose or any economic realty" is thought to somewhat exaggerate the situation as the evidence reveals it.

It is impossible for this court to say that the trustee rendered no services to the partnership; and it is equally impossible to say that that which he did, contributed materially to its prosperity. In other words, in my opinion Mr. Horowitz was something more than a mere figurehead, and something less than a real factor in the business enterprise of the partnership.

The argument made for the Government that the trustee lacked control over the corpus of the trust is again an overstatement; he may have exercised no such control during 1945 but he did in later years, and that fact has been consulted in arriving at the fundamental

question of the original intent of the parties.

The cases cited by the defendant have been examined, and it is thought that the circumstances in each are clearly distinguishable from those here present.

Feldman v. Commissioner, 4 Cir., 186 F.2d 87, 91. This case involved a family partnership created under circumstances that are not parallel to these; in affirming a Tax Court decision which refused to accord partnership status to an enterprise organized so as to include a trustee as partner, the court wrote in part as follows:

"The admission of the trust as partner, although it may have been motivated in part by a desire to furnish Samuel an incentive, was primarily to spread out the distribution of profits in one branch of the family."

No evidence of like import is believed to be present in this case.

Eisenberg v. Commissioner, 3 Cir., 161 F.2d 506. In this case, partners conveyed in trust to themselves as trustees one-half of their respective interests in the partnership for their minor children. Again the Tax Court refused to recognize the partnership, and the court scrutinized the terms of the trust and partnership agreements and construed them so as to sustain the action of the Tax Court. On page 511 of 161 F.2d, the opinion for affirmance contains the following:

"Accordingly, it is our opinion that the Tax Court, on the facts of this case, could reasonably conclude, as it did, that the arrangements made by the petitioners did not effect a change in their economic status, but multiplied, in form, a single economic unit."

It seems to this court that the underlying facts are sufficiently different to indicate an essential distinction between the two cases.

Stanton v. Commissioner, 7 Cir., 189 F.2d 297. The distinguishing fact in this case is that the income of the partnership composed of individuals who also constituted themselves trustees for the benefit of close relatives, was produced by the personal services of the partners rather than through any capital contributions involved in the setting up of the trusts.

That case is thus of no present application.

The criticism which the Government makes, namely that the trustee was not active, has already been discussed. If a finding were required, it would be to the effect that his inquiries and consultations cannot be entirely ignored, although they were probably of more value to him in the performance of his fiduciary duties rather than to the partnership.

It is also urged that the trust funds were originally the property of Abraham and Shirley Goldberg and did not add any real value to the assets of the partnership, and indeed were perhaps not necessary to the conduct of the partnership affairs. It is true that the enterprise was a profitable one, but whether it would have been equally so if the trustee's capital had not been contributed, this court is unable to say.

It is also argued that the trustee did not have dominion and control over the capital which he administered. It has been pointed out above that subsequent to 1945 that is not an accurate statement, although it is probably true as to the year 1945.

It is also urged in the language of counsel's argument at the trial: "The fact of the matter remains, we believe, your Honor, that this money started out in the business where Mr. and Mrs. Goldberg controlled it through the operation thereof and that it stayed right there."

The answer in my opinion is that the capital which Mr. and Mrs. Goldberg intended their sons to have could have been diverted by the latter had they so chosen, from the family enterprise; the fact that they did not so elect does not alter the initial intent of the parties,

**264**

which has been the effort here to portray. The corpus of each trust fund never reverted to either of the donors, directly or indirectly.

To quote from the Culbertson case (337 U.S. at page 746, 69 S.Ct. at page 1216):

> "But application of the Clifford-Horst principle does not follow automatically upon a gift to a member of one's family, followed by its investment in the family partnership. * * * The fact that transfers to members of the family group may be mere camouflage does not, however, mean that they invariably are."

It results that this court finds that the partnership formed in 1945 by the Goldbergs and the trustee, sufficiently meets the tests laid down in the Culbertson case to entitle the plaintiff to judgment in accordance with the prayer in the complaint, which is to be settled on notice.