**Lena DRECHSLER, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

United States District Court
S. D. New York.
April 18, 1958.

Louis Bender, Bernard Weiss, New York City, for plaintiff.

Paul W. Williams, U. S. Atty. for the Southern District of New York, New York City, for defendant. Milton E. Lacina, Asst. U. S. Atty., New York City, of counsel.

SUGARMAN, District Judge.

Lena Drechsler sues the United States of America under 28 U.S.C.A. § 1346(a) (1) to recover income taxes paid to the defendant.

The testimony, exhibits and stipulation of facts received on the trial of the action establish the following:

On April 15, 1906, T. Frederick Jackson, Inc. was formed. On January 1, 1944, this domestic corporation was engaged in the business of electrical contracting with its principal office in New York City.

On March 8, 1944, T. Frederick Jackson, Inc. entered into a contract with East Coast Shipyards, Inc. (a prime contractor under a contract with the National Maritime Commission) to make electrical installations on certain tankers, compensation to be paid on the basis of a fixed amount per tanker.

On October 16, 1944, Gus Drechsler, Harold Webster and LeRoy Hagan who owned respectively 60 per cent, 20 per cent and 20 per cent of the capital stock of T. Frederick Jackson, Inc., meeting as directors of the corporation, resolved that the contract with East Coast Shipyards be assigned to a partnership to be known as T. F. Jackson Co., composed of Drechsler, Webster and Hagan.

The partnership was capitalized with $20,000 brought in by the partners in the ratio of their stock interest in T. Frederick Jackson, Inc., viz., 60–20–20, and profits and losses were to be distributed or borne by the partners in the same proportion.

Drechsler, Hagan and Webster chose the formation of a partnership to carry out the maritime electrical contracts in order to separate them from the work done by T. Frederick Jackson, Inc. on shore projects. They feared that should the maritime contracts be completed by the corporation and additional work of this nature be diminished by cessation of hostilities, the corporation might encounter claims from the union because of a substantial wage differential allowed for the maritime electrical workers over the shore-working electricians. They also anticipated, in the event of stoppage of the maritime war work, a conflict between the union representing the men employed on the tankers and that representing those employed on shore work as to seniority determining retention in employment. In essence they sought a complete separation of the recently acquired tanker work from the original and ongoing shore work.

The assignment of the contract was made on October 26, 1944. It was approved by the East Coast Shipyards, Inc. and the United States Maritime Commission. The corporation, however, was not released from its obligations under the contract despite the assignment thereof to the partnership.

Drechsler, Webster and Hagan on October 27, 1944 declared that they each held his interest in T. F. Jackson Co. partially in trust. Drechsler retained for himself a 6 per cent interest in the

firm, Webster a 2 per cent interest and Hagan a 5 per cent interest.

By formal declarations of trust, Drechsler set up two trusts, one for his wife, Lena, and one for his daughter, Elaine, the corpus of each of which was a 27 per cent interest in the firm of T. F. Jackson Co.

The trusts were irrevocable. Gus Drechsler was appointed trustee of each trust with full power of management. One, Charles Drechsler, was named successor trustee of the trust for Lena Drechsler. Lena Drechsler was named successor trustee of Elaine's trust. Drechsler retained no right of reverter in these trusts. Lena Drechsler had the right in her discretion to take any or all of the trust property at any time during its existence.

Webster set up similar trusts for his wife and children. Hagan gave part of his interest in the firm to trusts for his son and daughter.

Drechsler donated to each trust the sum of $5,400, which represented a 27 per cent interest in the partnership's capital of $20,000. In 1945 Drechsler filed a gift tax return showing these gifts.

On October 27, 1944, T. F. Jackson Co. admitted as partners the trusts which had been set up by Drechsler, Webster and Hagan. Partnership and trade name certificates were filed in the New York County Clerk's office.

On December 13, 1944, T. F. Jackson Co. agreed to and thereafter did make electrical installations on two tankers in addition to those identified in the contract assigned by T. Frederick Jackson, Inc.

It was provided in the partnership agreement entered into by Drechsler, Webster, Hagan and the trusts that:

"6. There shall be paid by the partnership to Gus Drechsler, Leroy Hagan and Harold Webster, such a salary as shall be agreed upon by the partners in writing from time to time.

"7. * * * The salaries of Gus Drechsler, Leroy Hagan and Harold Webster, as provided in paragraph '6' hereof, shall not be considered as part of the profits to which said parties shall be entitled * * *."

For the years 1944 and 1945, Gus Drechsler was paid a salary by the partnership and a separate salary by the corporation, the amount from each being based on a reasonable estimate of the value of the efforts expended by him in furtherance of the business of each said entity.

The profits from the completion of the contracts with East Coast Shipyards, Inc. were then reported to the Internal Revenue Service as income of the T. F. Jackson Co.

At first the Service refused to recognize the assignment of the contract by the corporation to the partnership and it charged the income from all the work done under the contract to T. Frederick Jackson, Inc. After conferences, however, the Service changed its position and recognized the existence of T. F. Jackson Co. for income tax purposes in so far as here pertinent except that $15,148.99 of the 1944 income from performance of the tanker contract was found to be the value of work in progress at the time of the assignment, done by and attributable to T. Frederick Jackson, Inc. The taxpayers agreed to this apportionment.

The Commissioner refused to recognize any of the trusts as separate taxable entities, i. e., members of T. F. Jackson Co., and deficiencies of income tax were assessed against Drechsler, Webster and Hagan on the theory that the trusts for the members of these partners' families were not required to be recognized for tax purposes and the income returned by the trusts was actually the income of the individual partners-settlors-trustees.

Gus Drechsler died on January 12, 1946. His wife, as executrix of his estate, paid the claimed deficiencies of income tax due from the estate for the

years 1944 and 1945 and she thereafter filed claims for refund thereof. The refund claims were rejected and the instant action was commenced.

In summary, the significant chronology is this—

March 8, 1944 — T. Frederick Jackson, Inc. as subcontractor entered into a contract with East Coast Shipyards, Inc. to install electrical work on 24 tankers at a fixed amount per tanker.

October 16, 1944 — T. Frederick Jackson, Inc. decided to assign the East Coast Shipyards, Inc. contract to a copartnership, to wit, T. F. Jackson Co. T. Frederick Jackson, Inc. had completed 13 of the 24 tankers and had performed work valued at $15,148.99 on 4 of the remaining 11 tankers.

October 26, 1944 — The three stockholders of T. Frederick Jackson, Inc. formed the partnership T. F. Jackson Co., each acquiring an interest therein comparable to his interest in the corporation. The contract between T. Frederick Jackson, Inc. and East Coast Shipyards, Inc. was assigned to T. F. Jackson Co. with the approval of East Coast Shipyards, Inc.

October 27, 1944 — One of the partners, Gus Drechsler, owner of 60 per cent of T. F. Jackson Co., made gifts of 27 per cent of his 60 per cent interest in T. F. Jackson Co. to each of two irrevocable trusts which he established, one for his wife Lena, the other for his daughter Elaine, of which trusts he was appointed the trustee. The trusts were then admitted as general partners of T. F. Jackson Co.

November 7, 1944 — The United States Maritime Commission approved the assignment of the contract by the corporation to the partnership.

November 8, 1944 — A 'partnership' certificate and a 'trade-name' certificate were filed by T. F. Jackson Co. in the New York County Clerk's office.

| | |
|---|---|
| December 13, 1944 | — T. F. Jackson Co. contracted with East Coast Shipyards, Inc. to install electrical work on two additional tankers. |
| April 9, 1945 | — Lena Drechsler terminated her trust and took over the corpus thereof. |

The defendant's contentions in essence are: (a) Drechsler did not in good faith and for a business purpose join together with the trusts for Lena Drechsler and Elaine Drechsler to conduct the business; (b) the creation of the trusts was an anticipatory assignment of income and as such is deemed taxable to the transferor; and (c) the government has a right to reallocate the distribution of partnership income for tax purposes.

#### A.

The statute * in pertinent part provides:

"§ 3797. Definitions

"(a) When used in this title * * *

"(2) Partnership and partner.

"The term 'partnership' includes a syndicate, group, pool, joint venture or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization. A person shall be recognized as a partner for income tax purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person."

Capital was a material income-producing factor in the operations of T. F. Jackson Co. Coupled with the services to be performed and the material to be furnished, capital had to be employed to complete the balance of the assigned contract and the later one made directly by the partnership for the work on the additional tankers.[1]

In Commissioner v. Culbertson,[2] the court laid down the test to be applied in determining whether the Commissioner need recognize purported members of a family partnership and that test is simply the existence or absence of "a bona fide intent of the parties to join together as partners." Even in the case of a partner who fails to contribute "vital" services and who "has not participated in 'management and control of the business' or contributed 'original capital'" he is not on these findings alone precluded from being found to be a partner for tax purposes. These findings place a heavy burden on the taxpayer to show the bona fide intent to join together as partners.[3] However, in any case, the ultimate inquiry is

"* * * whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital

---

* 26 U.S.C.A. (I.R.C.1939).

1. Commissioner v. Montgomery, 5 Cir., 1944, 144 F.2d 313, 315; A Taxwise Evaluation of Family Partnerships, 32 Iowa L.R. 436, 455.

2. 337 U.S. 733, 744, 69 S.Ct. 1210, 1215, 93 L.Ed. 1659.

3. Commissioner v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659.

contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

The "business purpose" requirement means, obviously, a purpose to carry on the business in the style and by the entities which the partnership agreement ostensibly contemplates. It does not imply a requirement that the family partnership be formed so that some business advantage will be had which was not found in the method of doing business which preceded the formation of the purported partnership.[4]

■ The presence of such a business advantage, if it is found to exist, will naturally fortify a finding of the requisite intent to form a real partnership, but the absence of business advantage flowing to the entrepreneurs from doing business as a partnership with trusts as members, like absence of "vital services" and "original capital" is not a critical criterion; it is merely some evidence to be weighed in determining the true intent of the purported partners.[5]

It seems that the foregoing is true at least in those cases where, in choosing a form of family partnership as the mode of doing business, there is some motive for so doing in addition to a motive of keeping down taxes,[6] e. g., the motive to provide for the financial security of the beneficiary of the arrangement.[7] The presence of this latter motive was established on the trial of the instant action.

If, however, "business advantage" need be found to recognize a family partnership of this type, it was proven to exist here, viz., the separation of the maritime work from the shoreside contracts, insulating T. Frederick Jackson, Inc. from possible union controversy on completion of the contracts for the marine installations.

■ In this view of the instant case, it is clear that the partnership formed on October 27, 1944 between Drechsler, Webster, Hagan and the various trusts is entitled to recognition for income tax purposes.

Considering all the circumstances, the court is persuaded that the parties in their individual and fiduciary capacities intended to and did carry on the business of T. F. Jackson Co. as successor to T. Frederick Jackson, Inc. in making the electrical installations on the tankers under the assigned and direct sub-contracts with East Coast Shipyards, Inc. and thus creating the profits realized from the work. To find otherwise would ignore the facts stipulated and as appeared in the testimony and exhibits.[8]

The circumstance that each partner was trustee of the trusts for the benefit of his relatives is not a controlling factor in this case.[9] The trusts were "real," executed with all legal formality and the trustee of the trusts here involved performed his duties with scrupulous regard for the letter and spirit of the trust instruments. None of the fruits of the trusts here in suit were enjoyed by the settlor Gus Drechsler.[10]

The funds received were applied to the respective trust purposes. At the time

4. Whayne v. Glenn, 6 Cir., 1955, 222 F. 2d 549, 551.

5. Cf. the analogous problem of whether a purported corporation is entitled to recognition for tax purposes. National Investors Corporation v. Hoey, 2 Cir., 1944, 144 F.2d 466.

6. Whayne v. Glenn, note 4 supra; Slifka v. Commissioner, 2 Cir., 1950, 182 F.2d 345.

7. Dickstein v. McDonald, D.C.M.D.Pa.1957, 149 F.Supp. 580.

8. Cf. Henslee v. Whitson, 6 Cir., 1952, 200 F.2d 538.

9. Miller v. Commissioner, 6 Cir., 1953, 203 F.2d 350; Thomas v. Feldman, 5 Cir., 1946, 158 F.2d 488; Goldberg v. United States, D.C.E.D.N.Y.1957, 152 F.Supp. 259; Dickstein v. McDonald, note 7 supra.

10. Cf. Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788.

of the trial, the trust for the daughter Elaine Drechsler was still in effect. Until she exercised her right to terminate her trust on April 9, 1945, the wife Lena Drechsler received her rights thereunder.

The defendant relies, *inter alia,* on Economos v. Commissioner [11] and that case is admittedly irreconcilable with the instant decision. I doubt that that case and certain of its successors in the Fourth Circuit [12] state the present applicable law. The Economos, Moore and Ritter decisions antedated the Supreme Court decision in Culbertson [13] which appears to reject the narrow rationale of those cases.

In decisions [14] after Culbertson the Fourth Circuit on the facts presented found that the requirements of a valid family partnership for income tax purposes as set out in Culbertson were not satisfied because the only purpose motivating the change was the desire to reduce federal income taxes. Similarly, cases in this circuit relied on by defendant [15] are distinguishable.

Here the trusts for Lena and Elaine contributed active participation in the affairs of the partnership in the form of services of the trustee Gus Drechsler to the partnership. Thus, Gus Drechsler served the partnership in three capacities (a) as an employee for which he received a salary; (b) as an individual partner for which he received 6 per cent of the profits; and (c) as trustee of the trust-partners for which each trust received 27 per cent of the profits.

It is evident from the record that the partners in T. F. Jackson Co., individual and trust, joined together, in good faith and for adequate business purposes to conduct the business of that partnership.

### B.

The defendant's further contention that the transactions here involved were mere assignments of anticipated assured income taxable to the transferor is not well founded. Even assuming as defendant here does, that income will be taxable to an assignor where "the gain at the time of the assignment was practically assured," the inapplicability of this statement of the Helvering v. Horst [16] rule to the instant case is manifested by defendant's further assertion that the rule applies where "no affirmative act by the donees was required so as to acquire the income; they merely waited for the income to come to them."

The donees of the interests granted in the trust agreements were the trustees, Drechsler, Hagan and Webster. It is clear that Drechsler, Hagan and Webster intended to and did complete the contracts here in their dual capacities of individual partners and as trustees in so far as that "intent" can be ascertained from their acts.[17] In fact the partnership contracted for two tankers not included in the original unfinished order which the corporation assigned to the partnership.

It is equally clear that the income was not assured, because realization of profits was predicated upon economical performance of the work in a time of labor and material shortages. The Maritime Commission had the right to reject the

11. 4 Cir., 1948, 167 F.2d 165, certiorari denied 335 U.S. 826, 69 S.Ct. 53, 93 L. Ed. 380, rehearing denied 335 U.S. 905, 69 S.Ct. 404, 93 L.Ed. 439.

12. Ritter v. Commissioner, 4 Cir., 1949, 174 F.2d 377; Moore v. Commissioner, 4 Cir., 1948, 170 F.2d 191, and cases therein cited, certiorari denied 337 U.S. 956, 69 S.Ct. 1528, 93 L.Ed. 1756, rehearing denied 338 U.S. 841, 70 S.Ct. 33, 94 L. Ed. 514.

13. Note 3, supra.

14. Maxwell v. Commissioner, 4 Cir., 1953, 208 F.2d 542; Stanback v. Robertson, 4 Cir., 1950, 183 F.2d 889, certiorari denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654.

15. Kocin v. United States, 2 Cir., 1951, 187 F.2d 707; Slifka v. Commissioner, note 6 supra.

16. 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; see Commissioner v. Sunnen, 333 U.S. 591, 605, 606, 68 S.Ct. 715, 92 L. Ed. 898.

17. Commissioner v. Culbertson, 337 U.S. 733, 743, 69 S.Ct. 1210, 93 L.Ed. 1659.

performance of the contracts by the firm within six months of completion. Since the work was being done on a fixed fee basis, profit making was not really guaranteed although Drechsler, Webster and Hagan at the time of the assignment from T. Frederick Jackson, Inc. to T. F. Jackson Co. had had sufficient experience to set proper and profitable production standards in the performance of the work.

The trusts having been found to have been "real," the income here involved was created by the business activities of the trustees *qua* trustees, albeit they simultaneously acted in part as individual partners. It follows that such income should be taxed to the various trusts as the entities which proportionately produced it.

### C.

 Finally, the facts here presented would not justify a finding that the Commissioner had the right under Weiss v. Johnson [18] to allocate the profits derived from the performance of the contracts. While Weiss dealt with a family partnership, the decision is based upon a patent inequitable distribution of profits considered in the light of the capital contributions of the respective partners and the services each contributed.

In the instant case, the profits were divided meticulously in accordance with the capital of the partners. The trustees acted and intended to act as aforesaid not only for themselves but also as fiduciaries, in conducting the business which created the income here concerned.

\* \* \* \* \* \*

In summary I find:

(a) The Trust for Lena Drechsler and the Trust for Elaine Drechsler were "real."

(b) Gus Drechsler owned a 6 per cent interest in the firm of T. F. Jackson Co. during 1944 and 1945, and the Trust for Lena Drechsler and the Trust for Elaine Drechsler each owned a 27 per cent interest in that firm.

(c) Gus Drechsler, the Trust for Lena Drechsler and the Trust for Elaine Drechsler, with others, were partners in the firm of T. F. Jackson Co. during 1944 and 1945.

(d) The income of T. F. Jackson Co. for the years 1944 and 1945 was earned by and was taxable to the partners—Gus Drechsler to the extent of 6 per cent; Trust for Lena Drechsler to the extent of 27 per cent and Trust for Elaine Drechsler to the extent of 27 per cent.

I conclude that the plaintiff is entitled to the relief demanded in the complaint.

Settle a judgment.

---

18.  2 Cir., 1953, 206 F.2d 350, certiorari denied 346 U.S. 924, 74 S.Ct. 310, 98 L.Ed. 417.